Rebecca L. Wilson (SBN 257613)
KUTAK ROCK LLP
5 Park Plaza, Suite 1500
Irvine, CA 92614
Tel:  (949) 417-0999
Rebecca.wilson@kutakrock.com

Chad T. Nitta (*appearance pro hac vice*)
Jill E. Beathard (*appearance pro hac vice*)
KUTAK ROCK LLP
1801 California St., Suite 3000
Denver, CO 80202
Tel:  (303) 297-2400
chad.nitta@kutakrock.com
jill.beathard@kutakrock.com

*ATTORNEYS FOR PLAINTIFF*
*Spider Labs, Ltd.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| IN RE RULE 45 SUBPOENAS ISSUED TO GOOGLE LLC AND LINKEDIN CORPORATION DATED JULY 23, 2020 | Case No. 5:20-mc-80141-VKD |
| SPIDER LABS, LTD. | Judge:  Hon Virginia K DeMarchi |
| Plaintiff, | **PLAINTIFF SPIDER LABS, LTD.'S RESPONSE IN OPPOSITION TO JOHN DOE'S MOTION TO QUASH SUBPOENAS ISSUED TO GOOGLE LLC AND LINKEDIN CORPORATION AND MEMORANDUM IN SUPPORT THEREOF** |
| v. | |
| JOHN DOE, | |
| Defendant. | [Filed concurrently with Declarations of Eurico Doirado and Chad T. Nitta] |
| | Date:          October 27, 2020 |
| | Time:          10:00 A.M. |
| | Courtroom:  2, Fifth Floor |

PLAINTIFF SPIDER LABS, LTD.'S RESPONSE IN OPPOSITION TO JOHN DOE'S MOTION TO QUASH SUBPOENAS ISSUED TO GOOGLE LLC AND
LINKEDIN CORPORATION AND MEMORANDUM IN SUPPORT THEREOF
Case No. 5:20-mc-80141-VKD

4831-9454-6890.7

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................... ii

STATEMENT OF THE ISSUE TO BE DECIDED ................................................... 1

I.     INTRODUCTION ......................................................................................... 1

II.    FACTUAL AND PROCEDURAL BACKGROUND........................................ 3

    A.    Spider Labs ....................................................................................... 3

    B.    The "Jeff Katzenberg" Emails ......................................................... 4

    C.    Doe's Admissions Confirm Numerous Inaccuracies ......................... 5

    D.    Doe Severely Mischaracterizes the Facts Related to MRC ................ 7

III.    ARGUMENT ................................................................................................. 8

    A.    Doe Fails To Show That He Is Entitled To First Amendment Protections .......... 8

    B.    Even If Doe's Communications Are Protected By The First Amendment, Spider Labs Is Not Required To Meet The Summary Judgment Standard.......... 10

    C.    Applying The Proper Standard, The Motion To Quash Should Be Denied ........ 12

        1.    Spider Labs Can Establish Each Of The Elements For Defamation ....... 12

            a.    The elements for a claim of defamation are present ................... 12

            b.    None of Doe's affirmative defenses save the Motion.................. 14

                (1)    Doe's emails were not opinion statements for purposes of a defamation analysis ................................... 15

                (2)    Additional discovery is necessary for the Court to ascertain the truth or falsity of Doe's statements............. 17

                (3)    Spider Labs is not a public figure, and evidence exists to support a finding of actual malice .................... 18

                (4)    Doe's Statements are not matters of public concern, but there is evidence supporting gross irresponsibility ................................................................. 21

        2.    Sufficient Evidence Exists to Support Claims of Tortious Interference with Contractual Relationships and Prospective Business Advantage ................................................................. 21

        3.    Spider Labs Has a Viable Claim for Injunctive Relief ........................... 23

        4.    The Balance of the Hardships Strongly Favor Spider Labs.................... 24

    D.    Doe Should Not Be Awarded His Attorney Fees ............................... 25

IV.    CONCLUSION............................................................................................. 25

i

4831-9454-6890.7

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Anonymous Online*,
  661 F.3d at 1173 ............................................................................................ *passim*

*Art of Living Foundation v. Does 1-10*,
  Case No.: 10-CV-05022-LHK (N.D. Cal. Nov. 9, 2011) .................................14, 15

*Bellavia Blatt & Crossett, P.C. v. Kel & Partners LLC*,
  151 F. Supp. 3d 287 (E.D.N.Y. 2015) ..............................................................16

*Biro v. Conde Nast*,
  963 F.Supp.2d 255 (S.D.N.Y. 2013)..........................................................18, 19, 20

*Blair v. Inside Ed. Prods.*,
  7 F.Supp.3d 348 (S.D.N.Y. 2014) ....................................................................21

*Bloom v. Fox News of Los Angeles*,
  528 F.Supp.2d 69 (E.D.N.Y. 2007) ..................................................................21

*Calvin Klein Trademark Trust v. Wachner*,
  129 F.Supp.2d 248 (S.D.N.Y. 2001) ................................................................18

*Columbia Ins. Co. v. seescandy.com*,
  185 F.R.D. 573 (N.D. Cal. 1999)......................................................................11

*Doe v. 2TheMart.com Inc.*,
  140 F.Supp.2d 1088 (W.D. Wash. 2001)............................................................9

*Doe v. Cahill*,
  884 A.2d 451 (Del. 2005)..................................................................3, 11, 12

*Egiazaryan v. Zalmayev*,
  880 F.Supp.2d 494 (S.D.N.Y. 2012)..................................................................16

*Enigma Software Grp. USA v. Bleeping Computer LLC*,
  194 F.Supp.3d 263 (S.D.N.Y. 2016)..........................................................18, 19, 20

*General Mills, Inc. v. Chobani, LLC*,
  158 F.Supp.3d 106 (N.D.N.Y. 2016)..................................................................23

*Gertz v. Robert Welch, Inc.*,
  418 U.S. 323 (1974)..........................................................................................18

*Grayson v. Ressler & Ressler*,
  271 F.Supp.3d 501 (S.D.N.Y. 2017)..................................................................15

*Gristede's Foods v. Poospatuck (Unkechauge) Nation*,
  No. 06–cv–1260, 2009 WL 4547792 (Dec. 1, 2009)........................................14

ii

PLAINTIFF SPIDER LABS, LTD.'S RESPONSE IN OPPOSITION TO MOTION TO QUASH SUBPOENAS ISSUED TO GOOGLE LLC AND LINKEDIN
CORPORATION AND MEMORANDUM IN SUPPORT THEREOF
Case No. 5:20-mc-80141-VKD

4831-9454-6890.7

*Highfields Capital Management, L.P. v. Doe*,
  385 F.Supp.2d 969 (N.D. Cal. 2005) ...........................................................................9, 11, 12

*Lerman v. Flynt Distrib. Co.*,
  745 F.2d 123 (2d Cir. 1984) ..................................................................................................18, 19

*McIntyre v. Ohio Elections Com'n*,
  514 U.S. 334 (1995) ........................................................................................................................9

*O.E.M. Glass Network, Inc. v. Mygrant Glass Co.*,
  436 F.Supp.3d 576 (E.D.N.Y. 2020) ........................................................................................22

*Puebla Palomo v. DeMaio*,
  403 F.Supp.3d 42 (N.D.N.Y. 2019) ..........................................................................................22

*Sabratek Corp. v. Keyser*,
  at *6 ..................................................................................................................................................16

*Salinger v. Colting*,
  607 F.3d 68 (2d Cir. 2010) ..........................................................................................................23

*Small Bus. Bodyguard Inc. v. House of Moxie, Inc.*,
  230 F.Supp.3d 290 (S.D.N.Y. 2017) ........................................................................................16

*Thai v. Cayre Group, Ltd.*,
  726 F.Supp.2d 323 (S.D.N.Y. 2010) ..................................................................................12, 14

*USA Technologies, Inc. v. Doe*,
  713 F.Supp.2d 901 (N.D. Cal. 2010) ....................................................................................9, 12

**Statutes**

Cal. Code Civ. Proc. § 1987.2(c) ....................................................................................................25

**Court Rules**

F.R.C.P. § 8 ..........................................................................................................................................14

C.P.L.R. § 3016 ....................................................................................................................................14

PLAINTIFF SPIDER LABS, LTD.'S RESPONSE IN OPPOSITION TO MOTION TO QUASH SUBPOENAS ISSUED TO GOOGLE LLC AND LINKEDIN
CORPORATION AND MEMORANDUM IN SUPPORT THEREOF
Case No. 5:20-mc-80141-VKD

4831-9454-6890.7

1

**STATEMENT OF THE ISSUE TO BE DECIDED**

2

Whether the Court should deny the Motion to Quash Subpoenas—Subpoenas that seek

3

limited information regarding the Movant's identity that would thereafter allow both Parties to

4

proceed to a resolution of Spider Labs's claims on the merits.

5

**I.     INTRODUCTION.**

6

From the very first sentence of his Memorandum of Points and Authorities in Support of

7

Motion of John Doe Movant to Quash Subpoenas to Google LLC and LinkedIn Corporation (the

8

"MPA"), John Doe repeatedly relies on carefully curated—but conveniently unverifiable—

9

statements of fact to support his Motion to Quash.  Thus, John Doe self-servingly characterizes

10

himself as a "computer scientist, fraud investigator, and part-time amateur blogger who has

11

dedicated the past decade to combatting advertising fraud ("Ad Fraud") on the Internet."  (MPA

12

1:2-3.)  In so doing, John Doe attempts to grab the intellectual and moral high ground, holding

13

himself out as a classic muckraker crusading for truth against evil Internet corporations.  Even

14

more critical to his strategy, John Doe offers this description of himself to bolster his calculated

15

attempt to cloak himself in the hard-fought protections afforded by the First Amendment as a

16

result of the tireless efforts of journalists, political activists, and advocates for change.  This Court

17

must ignore Doe's self-serving rhetoric for a host of reasons, including the simple, undisputed

18

truth that, unlike the First Amendment crusaders to whom he self-servingly compares himself,

19

Doe has *never* published a single word.

20

Plaintiff Spider Labs's claims in the underlying litigation are not about opinions published

21

by Doe on an Internet forum or message board that were intended to provoke debate or raise the

22

level of public discourse.  Rather, the conduct of Doe at issue is his decision to send personal,

23

unsolicited emails to thirteen of Spider Labs's customers and to claim that he had written an

24

article—which he now admits did *not* exist at the time he sent his emails—stating, among other

25

things, that Spider Labs was "defrauding their clients" and that Spider Labs's "clients aren't

26

actually protected from fraud."  (*See* Exs. A–E to Declaration of Eurico José Teodoro Doirado

27

("Doirado").)  This case is not about the First Amendment.  It is about a calculated attempt by a

28

competitor to attack another competitor under a cloak of anonymity and to exploit important protections afforded by the First Amendment.

Importantly, denying the Motion to Quash and allowing Spider Labs to take discovery to determine the identity of John Doe will *not* prevent Doe from raising his First Amendment defenses. To the contrary, allowing Spider Labs to identify Doe will only ensure that Spider Labs receives an opportunity to take discovery and to challenge substantively the factual allegations Doe has put squarely at issue. Doe's admissions confirm that, at a minimum, numerous questions of fact exist that Spider Labs must be allowed to explore. For example, despite claiming that he has "dedicated the past decade to combatting advertising fraud" and that he is a "fraud investigator" and "part-time amateur blogger," Doe fails in the MPA to identify a *single word* that he has published on the Internet or any action he has taken in the last decade to combat advertising fraud. (MPA 1:2-3.) Spider Labs must be afforded the opportunity to verify Doe's alleged history. With respect to Doe's alleged endeavor to "create" a "blog" concerning Ad Fraud, Doe concedes that he secured the domain name www.FightClickFraud.com on February 25, 2020 (Doe Decl. ¶ 7). Yet, despite his self-proclaimed decade of experience combatting Ad Fraud, Doe cannot deny that he has never published a single thing on the website. Accordingly, Spider Labs is entitled to explore the full extent of Doe's proclaimed blogging "efforts."

Further, Spider Labs is entitled to ascertain whether Doe solely targeted Spider Labs—a company that he allegedly only learned existed on June 10, 2020—or whether he also "investigated" Spider Labs's competitors. Spider Labs is also entitled to verify Doe's factual assertions since Doe's carefully curated recitation of events is riddled with inconsistencies and omissions. Finally, Doe admits he chose to use a pseudonym because he believed that if his identity was known, it would hurt his "credibility and neutrality" and he did not want his opinions to be "imputed to [his] employer." (*Id.* ¶ 9.) The import of these admissions is inescapable— Doe and his employer are known in the Ad Fraud space, presumably because they offer services aimed at combatting Ad Fraud. Put another way, Doe has put squarely at issue whether he is employed by one of Spider Labs's competitors. Spider Labs is entitled to discovery to confirm

PLAINTIFF SPIDER LABS, LTD.'S RESPONSE IN OPPOSITION TO MOTION TO QUASH SUBPOENAS ISSUED TO GOOGLE LLC AND LINKEDIN CORPORATION AND MEMORANDUM IN SUPPORT THEREOF
Case No. 5:20-mc-80141-VKD

4831-9454-6890.7

that implication, particularly since being a competitor would dramatically alter the applicability of Doe's free speech defense. At a minimum, this Court should conduct an *in camera* hearing to determine whether Doe is employed by a competitor of Spider Labs.[1] Such a determination is essential to evaluating the validity of Doe's allegations.

Finally, in his haste to paint himself as a First Amendment crusader, Doe ignores the vast amount of law that grapples with the interplay between First Amendment considerations, claims for defamation, and anonymity on the Internet. Rather than offer this Court any persuasive rationale to adopt a legal standard to evaluate Doe's requested relief, Doe instead, unsurprisingly, adopts the most stringent standard enunciated by any court. Doe's reliance on *In re Anonymous Online*, 661 F.3d 1168 (9th Cir. 2011)—an appeal concerning a decision by the District Court of Nevada applying the "summary judgment" standard announced by the Delaware Supreme Court in *Doe v. Cahill*, 884 A.2d 451 (Del. 2005)—is misplaced. As the Ninth Circuit itself recognized in *In re Anonymous Online*, this Court has repeatedly applied lesser evidentiary standards than the *Cahill* standard, principally because it is patently unfair to require a plaintiff to establish that it would prevail on summary judgment on its claims *before it is even allowed to take any discovery*. 661 F.3d at 1176-77. Applying the appropriate legal standard—a *prima facie* or good faith standard—it is undeniable Spider Labs has met its burden. In a decision ignored by Doe in the MPA, the United States District Court for the Southern District of New York has *already ruled* that Spider Labs established the *prima facie* elements of its claims. (Order Granting Mot. to Expedite Disc. 2, ECF No. 5 ("New York Order").) Doe fails to offer this Court any reason it should not defer to the district court in which the underlying action is pending. Thus, under the appropriate standard, the Motion to Quash must be denied.

## II.    FACTUAL AND PROCEDURAL BACKGROUND.

### A.    Spider Labs.

Spider Labs is a small company based in Tokyo, Japan, with a research development

---

[1] Whether or not Doe's employer was aware of, or sanctioned, Doe's conduct is irrelevant to a determination of the Motion to Quash. The fact that Doe works for a competitor is a critical fact to determining whether Doe's statements constitute commercial speech. *See, e.g.*, *In re Anonymous Online*, 661 F.3d at 1173.

center in Lisbon, Portugal.  (Doirado Decl. ¶¶ 3-4, 6.)  Founded in 2011 by Satoko Ohtsuki, a recent college graduate, Spider Labs has thirty-two employees.  (*Id.* ¶¶ 5-6.)  Despite its small size, Spider Labs is a leading provider of anti-Ad Fraud services with customers in Japan, Korea, and the United States.  (*Id.* ¶ 10.)  In February 2020, Spider Labs became the first vendor from the Asia-Pacific region to receive the "certified against fraud" seal from the Trustworthy Accountability Group ("TAG").  (*Id.* ¶ 11.)  Spider Labs's primary service, SpiderAF, is an anti-Ad Fraud software platform that offers users a variety of different services and functions, including a reporting dashboard, a shared "blacklist" service, and a real-time Ad Fraud detection application program interface.  (*Id.* ¶ 12.)  Importantly, the functionality each customer receives depends upon the services they sign up for.  (*Id.* ¶ 13.)  Not all of Spider Labs's customers use SpiderAF in the same manner. (*Id.*) Accordingly, the behavior of a SpiderAF user's website with respect to Ad Fraud will vary depending on the services the customer is receiving from Spider Labs, as well as the customer's system implementation.  (*Id.*)  In November 2019, as the notoriety of SpiderAF grew, Spider Labs made the decision to change its name from Phybbit to Spider Labs.  (*Id.* ¶ 14.)  Spider Labs completed its efforts related to its name change in June 2020 at the same time it moved its corporate headquarters in Tokyo, Japan.  (*Id.* ¶ 15.)

### B.     The "Jeff Katzenberg" Emails.

On June 15, 2020, Spider Labs received a direct message on Facebook from its customer, MOLOCO, Inc., a leading mobile AdTech company, informing them that they had received an email from Jeff Katzenberg and the email address jeff.k@fightclickfraud.com.  (*Id.* ¶ 16; Ex. A to Doirado Decl.)  Prior to receiving the email, Spider Labs had never had any dealings with an individual named "Jeff Katzenberg."  (Doirado Decl. ¶ 17.)  In light of the severity of the accusations in Katzenberg's email, including that Spider Labs's technology was not based on artificial intelligence, that Spider Labs was defrauding its clients, that Spider Labs's clients are not protected from Ad Fraud, and that Spider Labs's platform could not detect Ad Fraud, Spider Labs launched an investigation.  (*Id.* ¶ 18.)  As part of this investigation, Spider Labs reviewed its website and identified an Internet Protocol ("IP") address associated with an individual who

had viewed information related to MOLOCO shortly before MOLOCO received the email from Katzenberg. (*Id*. ¶ 19.) After identifying the IP address, Spider Labs checked its website records to see if the person associated with that IP address had reviewed any other client use cases or customer information around the same time that the MOLOCO information was reviewed. (*Id*. ¶ 20.) Spider Labs also identified an IP address that accessed its website via the LinkedIn app on June 15, 2020. (*Id*. ¶ 22.)

Spider Labs identified a number of its customers that had been viewed at the same time as MOLOCO, including ValueCommerce Co., Ltd. ("ValueCommerce") one of Japan's leading providers of e-commerce and Internet marketing solutions; United, Inc., a Japanese company that provides an advertising monetization platform known as "AdStir"; UNICORN, a fully automated marketing platform offered by Bulbit, Inc., a subsidiary of Adways, Inc. ("UNICORN"); and i-mobile Co., Ltd. ("i-mobile"), one of the largest advertising platform providers in Japan. (*Id*. ¶ 21.) Spider Labs subsequently contacted some of those customers, including ValueCommerce, United, UNICORN, and i-mobile, to determine whether they had received emails from Katzenberg. (*Id*. ¶ 23.) ValueCommerce, United, UNICORN, and i-mobile each confirmed that they had received an email on June 15, 2020 from Jeff Katzenberg and the email address jeff.k@fightclickfraud.com. (*Id*. ¶ 24; *see* Exs. B–F to Doirado Decl.) In the Subpoenas Doe is seeking to quash, Spider Labs is seeking to identify the person who registered the email address jeff.k@fightclickfraud.com and the person who was assigned the static IP address that visited Spider Labs's website through the LinkedIn app on June 15, 2020.

**C.      Doe's Admissions Confirm Numerous Inaccuracies.**

In his Declaration, Doe carefully muddles the timeline of events in order to give the false impression that he conducted an orderly investigation. In particular, Doe claims to have first learned about Spider Labs through a June 10, 2020 press release (Doe Decl. ¶¶ 12, 15), completed a subsequent investigation (*Id*. ¶¶ 16-17), identified Spider Labs's clients by visiting its website for the purpose of testing Spider Labs's claims regarding its technology (*Id*. ¶¶ 22-26), conducted

1    at least "twelve hours" of testing and research (*Id.* ¶¶ 27-30), and then contacted the customers

2    *after* completing his testing (*Id.* ¶¶ 31-32.)

3        Based on Spider Labs's initial investigation, the timeline painted by Doe in his Declaration

4    is not accurate.  Using the IP address it had identified, Spider Labs determined that "Jeff

5    Katzenberg" (hereinafter "John Doe" or "Doe") had reviewed use cases for at least a half dozen

6    of Spider Labs's customers on the evening[2] of June 14, 2020. (Doirado Decl. ¶¶ 16, 19-21.)  After

7    Spider Labs obtained copies of Doe's emails from its customers, it was able to correlate the time

8    stamps on those emails with the time the use cases were reviewed on its website.  (*Id.* ¶ 25.)  In

9    each instance, the emails were sent to the customer mere *minutes* after Doe reviewed the customer

10   information on Spider Labs's website.  (*Id.*)  Any claim by Doe to have completed a thorough

11   investigation of Spider Labs's technology as implemented by Spider Labs's clients prior to

12   contacting them is false.  No time lapsed between Doe identifying the customers and his sending

13   them emails.

14       Doe's untrue statements continued in the emails themselves.  In the emails, Doe claimed

15   to be "currently running an article about a fraudulent company called Phybbit/SpiderAF" and then

16   purported to summarize the contents of the article.  (*See, e.g.*, Ex. B to Doirado Decl.)  Yet Doe's

17   Declaration confirms that he was not running the article at the time he contacted Spider Labs's

18   customers for the simple reason that he had not even *begun* to write the article.  (Doe Decl. ¶ 39.)

19   Doe also claims to have "hired a team of engineers" to test Spider Labs's platform and then

20   proceeded to summarize the findings from that "team of engineers."  (*See, e.g.,* Ex. B to Doirado

21   Decl.)  Again, in his Declaration, Doe now claims to have done the analysis himself—at some

22   unspecified time.  (Doe Decl. ¶ 25-30.)

23       In his Declaration, in an effort to bolster his First Amendment argument and his self-

24   characterization as a "crusader," Doe goes to great lengths to claim that the launch of his website

25   and blog was imminent.  In particular, he claims that on July 23, 2020, he was contacted by his

26

27   _____

     [2] Spider Labs reasonably believes that Doe was in New York in June 2020 when the emails were sent to its customers.
28   Accordingly, for purposes of discussing the timeline of events, Spider Labs uses New York time.

website developer informing him that the website was complete and that he proceeded to take steps to launch his website. (Doe Decl. ¶ 43.) Doe then claims that in the course of continuing to take steps to launch his website, he first learned of the lawsuit. (*Id*. ¶ 45.) Doe's recitation of events is contradicted by his own emails. Specifically, on July 21, 2020—two days *before* Doe alleges that he learned of the underlying lawsuit—he contacted Spider Labs's counsel to discuss the lawsuit. (*See* Declaration of Chad Nitta ("Nitta") ¶ 4.)

Doe's secret emails to Spider Labs's customers attacking Spider Labs and its technology, when combined with the fact that Spider Labs was unable to identify any blog on the Internet authored by Doe, led Spider Labs to believe that Doe was working with a Spider Labs competitor. Accordingly, Spider Labs filed the lawsuit in the Southern District of New York on July 16, 2020 and sought expedited discovery to determine the identity of Doe.

### D. Doe Severely Mischaracterizes the Facts Related to MRC.

On June 15, 2020, Spider Labs received an email from an executive at the Media Rating Council ("MRC")[3] in which MRC questioned Spider Labs's March 25, 2020 press release in which Spider Labs stated that it had "earned accreditation" by MRC. (Doirado Decl. ¶ 27.) Spider Labs reviewed the press release and confirmed that, as a result of a translation error, the "accreditation" reference only existed in the English version of the press release. (*Id*. ¶¶ 29-30.) The original version of the press release, published in Japanese, correctly stated that Spider Labs was "compliant" with MRC guidelines. (*Id*.) Upon discovering the error, Spider Labs issued a correction in English, explaining the translation mistake. (*Id*. ¶ 31.)

Spider Labs later learned that Doe had also sent an email to MRC on June 14, 2020 at roughly the same time that he sent the emails to Spider Labs's customers. (*Id*. ¶¶ 32-33.) In the email, Doe claimed that he was working on his "10 first blog posts" and that one of those related to "false prophets"—companies that falsely claimed accreditation from entities like MRC. (Ex. F to Doirado Decl.) Tellingly, Doe omitted this contact with MRC from his lengthy Declaration.

---

[3] MRC had originally emailed Spider Labs on June 10, 2020 but Spider Labs did not receive that email as it was in the process of moving offices.

1  (*See generally*, Doe Decl.)  Although he may have had multiple reasons for omitting this
2  reference, one obvious reason stands out.  In the June 14, 2020 email to MRC, Doe claimed to
3  have contacted "several" of Spider Labs's clients—including ValueCommerce—and *to have*
4  *received responses.*  (Ex. F to Doirado Decl.)  Specifically, Doe claimed that every Spider Labs
5  customer he had contacted told him that "one of the main reasons for them in acquiring Phybbit
6  services was their claim that they are MRC accredited.  (*Id.*)  In stark contrast to Doe's false
7  claims to MRC, he did not even *send* his email to ValueCommerce until *after* he sent his email to
8  MRC.  (Exs. B and F to Doirado Decl.)  Accordingly, Doe intentionally misrepresented to MRC
9  his actions in an effort to augment the perceived importance of the translation error in the English
10  version of Spider Labs's press release.

## III.    ARGUMENT.

### A.    Doe Fails To Show That He Is Entitled To First Amendment Protections.

13        In his Motion and the MPA, Doe boldly declares that the thirteen emails that he sent to
14  Spider Labs's customers are "anonymous free speech" entitled to First Amendment protection.
15  (*See* MPA 5:21-22.)  In support of his argument, Doe repeatedly offers parenthetical citations to
16  cases holding that online speech is subject to First Amendment protections.  (*Id*. 5:22-6:13.)
17  Doe's emphasis that online speech should be treated the same as other types of speech is a red
18  herring.  The fact that Doe used an online means to deliver his communications is not
19  determinative of whether his emails constitute protected free speech.

20        The speech at issue is not a published article, blog, or online post.  Rather, the speech in
21  question are thirteen private communications sent by Doe to Spider Labs's customers—and *only*
22  to Spider Labs's customers.  Doe never released the contents of those emails publicly nor shared
23  them beyond their intended recipients.  In fact, the only reason that Spider Labs learned of their
24  existence is because they were contacted by the customers that Doe solicited.  Doe does not cite
25  to any law that supports a finding that private communications—unlike public online posts or
26  commentary—are subject to First Amendment protections.  Doe's presumption that his emails
27  constitute protected free speech particularly baseless given that the emails did not facilitate "rich,

1   diverse, and far ranging exchange of ideas" or "open communication and robust debate." *Doe v.*

2   *2TheMart.com Inc.*, 140 F.Supp.2d 1088, 1092 (W.D. Wash. 2001).

3          Although he offers no law or analysis, Doe apparently believes that the fact that the emails

4   were allegedly sent in furtherance of his efforts to write an online blog renders his emails

5   protected speech.  Even if Doe *had* cited law for such a proposition, Doe's alleged *intention* to

6   publish a blog or online article—a question of fact that Spider Labs should be allowed to test

7   through discovery—is irrelevant because it is undisputed that Doe did not follow through on his

8   intention.  (Doe Decl. ¶ 46.)  In fact, it is undisputed that Doe, a self-described "part-time amateur

9   blogger," has failed to identify a single word that he has published anywhere.  (*See* Doe Decl. ¶¶

10  11, 41, and 46.)  The cases relied upon by Doe in the MPA do not support extending First

11  Amendment protections to non-public correspondence.  *See e.g. Highfields Capital Management,*

12  *L.P. v. Doe*, 385 F.Supp.2d 969 (N.D. Cal. 2005) (addressing anonymous statements posted on

13  online forums); *McIntyre v. Ohio Elections Com'n*, 514 U.S. 334 (1995) (addressing the public

14  distribution of leaflets); *In re Anonymous Online*, 661 F.3d at 1172 (addressing online blog posts);

15  *USA Technologies, Inc. v. Doe*, 713 F.Supp.2d 901 (N.D. Cal. 2010) (addressing messages posted

16  to an online forum).

17         Even assuming *arguendo* that Doe's private, non-published emails were the type of speech

18  subject to First Amendment protection, Doe fails to support adequately his demand for

19  anonymity.  To be clear, the sole issue presented in the Motion to Quash is whether the First

20  Amendment is sufficient grounds to protect his *anonymity*, not whether freedom of speech

21  protects him from liability for his defamatory statements.  According to Doe, anonymity allowed

22  him to "protect his privacy, safety, and professional reputation from intimidation or

23  harassment…" (MPA 6:17-18.)  However, such protections would only matter if *Doe actually*

24  *published something*.  He does not offer this Court any reason to believe that anonymity was

25  essential to protect his "privacy" or to promote his "safety" from "intimidation" or "harassment"

26  by the recipients of his emails—the only people he intended to see his correspondence.  In

27  particular, Doe does not claim he expected the recipients to retaliate against him or that he

28

9

PLAINTIFF SPIDER LABS, LTD.'S RESPONSE IN OPPOSITION TO MOTION TO QUASH SUBPOENAS ISSUED TO GOOGLE LLC AND LINKEDIN
CORPORATION AND MEMORANDUM IN SUPPORT THEREOF
Case No. 5:20-mc-80141-VKD

4831-9454-6890.7

1   expected them to provide copies of the emails to Spider Labs, or even that he is concerned about

2   that if his identity is revealed in this litigation.  At most, Doe can argue that he required anonymity

3   to promote his objectivity—although Doe makes this argument solely in the context of his

4   hypothetical blog.  (*Id.* 6:21-23.)  The benefit to Doe of artificially enhancing his credibility by

5   hiding his identity and the identity of his employer does not implicate First Amendment

6   considerations when the only people Doe contacted were Spider Labs's customers.

7          Absent any law beyond parentheticals that merely recite the importance of free speech in

8   American jurisprudence, Doe has failed to offer this Court any reason to conclude that his private

9   emails to Spider Labs's customers are subject to First Amendment protections.  Given that Doe's

10  sole basis for seeking to quash the subpoenas is his alleged right under the First Amendment to

11  maintain his anonymity, the Motion should be denied as a matter of law.

12         **B.      Even If Doe's Communications Are Protected By The First Amendment,
                    Spider Labs Is Not Required To Meet The Summary Judgment Standard.**

13         In *In re Anonymous Online*—cited by Doe throughout the MPA—the Ninth Circuit

14  considered a writ of mandamus challenging an order by the Nevada District Court requiring the

15  disclosure of the identities of three anonymous online posters.  661 F.3d at 1171.  In denying the

16  writ of mandamus—and thereby upholding the requirement that the anonymous online speakers

17  be identified—the Ninth Circuit made several important rulings that Doe entirely ignores.

18         First, the Ninth Circuit specifically noted that the "right to speak, whether anonymously

19  or otherwise, is not unlimited…and the degree of scrutiny varies depending on the circumstances

20  and the type of speech at issue."  *In re Anonymous Online*, 661 F.3d at 1173.  Further, the Ninth

21  Circuit recognized that commercial speech, unlike political speech, enjoys only a "limited

22  measure of protection, commensurate with its subordinate position on the scale of First

23  Amendment values," and such protection only applies as long as the "communications is neither

24  misleading nor related to unlawful activity."  *Id.*  Thus, under the Ninth Circuit's holding, the

25  circumstances surrounding Doe's conduct, as well as whether the communications were

26  commercial in nature, are relevant to any First Amendment analysis.

27

28

1
2
3
4
5
6
7
8
9
10
11

In this instance, it is undisputed that the only speech at issue are private communications sent specifically to Spider Labs's customers. It is further undisputed that, regardless of Doe's alleged intentions, the communications were never published publicly or used in connection with something that was. Finally, Doe effectively admits that he individually and his employer are active in the Ad Fraud space—the same industry in which Spider Labs competes. Under these circumstances, there is at least a question of fact—and one that cannot be resolved without appropriate discovery—regarding whether Doe's communications should properly be viewed as commercial speech. For all of these reasons, the Motion to Quash should be denied and Spider Labs's case should be allowed to proceed so that it can take discovery related to Doe's identity. Such discovery will not rob Doe of his opportunity to raise his First Amendment defense. It will only ensure that his defense is considered on its merits and in light of all relevant facts.

12
13
14
15
16
17
18
19
20
21

Second, the Ninth Circuit surveyed decisions from across the country and determined that a range of legal standards existed for evaluating whether disclosure of an anonymous speaker's identity was appropriate. *Id*. at 1175-76. These standards varied from a "motion to dismiss" standard requiring a showing of good faith on the part of the party seeking discovery (relying on, among others, this Court's decision in *Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573 (N.D. Cal. 1999)) to a "*prima facie*" standard requiring a *prima facie* showing of the claim for which the party seeks the disclosure (relying on, among others, this Court's decision in *Highfields Capital Mgmt., LP v. Doe*, 385 F.Supp.2d 969 (N.D. Cal. 2005)) to the highest standard—the "summary judgment" or *Cahill* standard—requiring that the party seeking the discovery demonstrate it could obtain summary judgment on its claim. *Id*.

22
23
24
25

Despite the Ninth Circuit's clear separation of the various standards, Doe attempts to conflate the *prima facie* and *Cahill* "summary judgment" standards. (MPA 7:18-22.) The Ninth Circuit expressly noted that the *Cahill* "summary judgment" standard is *different* than the "*prima facie*" standard adopted by this Court in *Highfields*.[4] *In re Anonymous Online*, 661 F.3d at 1175.

26
27
28

---

[4] Notably, Magistrate Judge Brazil in the *Highfields* decision relied on this Court's decision in *Columbia*, which the Ninth Circuit noted in *In re Anonymous Online* only required a "good faith" showing, not a *prima facie* showing.

Worse, Doe blatantly mischaracterizes the decision in that case:  in direct contradiction to Doe's claim, the Ninth Circuit did *not* adopt the *Cahill* standard.  (MPA 7:18-22.)  Rather, it held that the Nevada District Court should not have applied the *Cahill* standard because the speech at issue was not political.  *In re Anonymous Online*, 661 F.3d at 1177.

In *USA Technologies*, this Court expanded on its decision in *Highfields* and held that in the context of a motion to quash a subpoena aimed at identifying an anonymous speaker, it is the burden of the party seeking the discovery to "adduce, without the aid of discovery, *competent evidence* addressing all of the inferences of fact essential to support a prima facie case on all elements of a claim." 713 F.Supp.2d at 907 (emphasis in original).  After that showing is made, the reviewing court must balance the competing interests of the parties.  *Id*.

**C.     Applying The Proper Standard, The Motion To Quash Should Be Denied.**

Applying the proper standard for evaluating Doe's First Amendment arguments, the Motion to Quash should be denied because Spider Labs can demonstrate and cite to competent evidence supporting the *prima facie* elements of each of its claims.  Not only will it demonstrate that here, but the Southern District of New York has *already* held that Spider Labs established each of the elements in its Complaint.  (New York Order 2.)

**1.     Spider Labs Can Establish Each Of The Elements For Defamation.**

**a.     The elements for a claim of defamation are present.**

In order to evaluate whether Spider Labs can make a *prima facie* case for defamation, it is necessary first to determine the elements of the claim and the level of showing that is required at this stage of the proceedings (*i.e.* at the pleading stage).  To succeed on a claim for defamation, a plaintiff must establish "'(1) a false statement about the plaintiff; (2) published to a third party without authorization or privilege; (3) through fault amounting to at least negligence on [the] part of the publisher; (4) that either constitutes defamation per se or caused 'special damages'." *Thai v. Cayre Group, Ltd.*, 726 F.Supp.2d 323, 329 (S.D.N.Y. 2010).

On the face of the Complaint, Spider Labs alleged (1) Doe published one or more false and derogatory statements about Spider Labs (2) to Spider Labs's customers (3) intentionally, or

with negligent disregard for the statements' falsity (4) that constituted defamation per se and caused general and special damages to Spider Labs. (Compl. ¶¶ 15-17, 31-35.)

Moreover, Spider Labs can point to competent evidence outside the pleading supporting each element. First, Spider Labs has in its possession many of the emails that Doe admits (Doe Decl. ¶ 32) that he sent to Spider Labs's customers on June 15, 2020. (*See e.g.* Exs. A–E to Doirado Decl.) Those emails contain numerous false statements, including that (1) Doe was running an article about Spider Labs and its product, SpiderAF, on his blog; (2) Spider Labs's technology is not based on artificial intelligence; (3) Spider Labs is defrauding its clients; (4) Spider Labs's clients are not protected from fraud; (5) he had hired a team of engineers to test Spider Labs's technology; (5) there is nothing behind Spider Labs's platform; and (6) Spider Labs's platform cannot detect fraud. (*Id.*) Notably, Doe does *not* address the foregoing portions of his emails in the Motion or the MPA, instead choosing repeatedly to characterize the emails or to quote snippets focused on the press release related to MRC. Doe's reason for doing this is obvious—the emails, viewed in their entirety, are competent evidence of Spider Lab's defamation claims. Doe does not allege that Spider Labs authorized him to send the emails. Thus, Spider Labs has more than sufficient competent evidence to meet the first two elements of a *prima facie* case for defamation under New York law.

In terms of the third element—fault amounting to at least negligence—Doe freely admits that he made no effort to contact Spider Labs prior to sending his unsolicited emails to Spider Labs's customers. (*See* Doe Decl. ¶¶ 31-32.) Further, he did not license Spider Labs's technology for evaluation purposes or discuss with any of Spider Labs's customers the type of functionality that they had licensed from Spider Labs, how it was supposed to work, or what it was supposed to do. Doe claims to have done testing but does not claim to have followed any established methodology to ensure the validity or accuracy of his testing methods. (Doe Decl. ¶¶ 22-26.) In the *only* other "investigation" that Doe claims he conducted during 2020—related to two websites that published reviews—the *first* thing Doe claims to have done is contact the websites and

brought the issue to their attention (Doe Decl. ¶ 11)—something that indisputably did not occur here as Doe *never* contacted Spider Labs regarding his allegations.  Thus, Doe's own admissions confirm that competent evidence exists to support a *prima facie* finding that Doe acted at least negligently when publishing the emails in question.

As for the final element, under New York law, generally "a statement that 'tend[s] to injure the plaintiff in his or her trade, business or profession' is defamatory per se and does not require proof of special damages to be actionable," and "'[w]here a statement impugns the basic integrity or creditworthiness of a business, an action for defamation lies and injury is conclusively presumed'." *Thai*, 726 F.Supp.2d at 331 (citations omitted).  Doe's statements relate directly to Spider Labs's business, its products, and its integrity.  As such, the final element is present.  Therefore, Spider Labs has established a *prima facie* claim for defamation.[5]

### b.    None of Doe's affirmative defenses save the Motion.

In a strategic effort to overcome Spider Labs's competent evidence, Doe boldly states that in "evaluating the viability of a plaintiff's claims, the Court should consider any and all affirmative defenses presented by the defendant."  (MPA 14:5-7.)  Put bluntly, the single case that Doe relies on for this proposition does *not* support Doe's argument.  In *Art of Living Foundation v. Does 1-10*, Case No.: 10-CV-05022-LHK (N.D. Cal. Nov. 9, 2011), this Court stated in a footnote that a reviewing court *might* consider fair use arguments raised in a motion to quash even where the applicable standard requires only a *prima facie* showing of the plaintiff's

---

[5] Spider Labs is not required, as Doe implies, to meet the heightened pleading standard required by New York statute for defamation claims.  The very cases cited by Doe clearly state as such.  *See, e.g., Gristede's Foods v. Poospatuck (Unkechauge) Nation*, No. 06–cv–1260, 2009 WL 4547792 at *9 (Dec. 1, 2009) ("the federal rules do not require the particularized pleading requirements set forth in New York's C.P.L.R. section 3016").  Rather, federal courts, even in New York, apply the pleading standard of Federal Rule of Civil Procedure 8, that "each pleading be specific enough to 'afford defendant sufficient notice of the communications complained of to enable him to defend himself'." *Id.* (internal citations omitted).  For defamation claims in particular, the Southern District of New York requires that plaintiffs identify the allegedly defamatory communication, who made it, to whom, and when. *Thai*, 726 F.Supp.2d at 329.  Doe's argument that Spider Labs's allegations lack the required particularity does not change the conclusion that Spider Labs has met the burden of establishing a *prima facie* claim for defamation.  Spider Labs alleged in the Complaint that one or more false statements of fact about Spider Labs were communicated in emails, sent by Doe, to multiple Spider Labs customers, on June 15, 2020. Compl. ¶¶ 23, 31. Spider Labs even summarized what assertions in the emails were defamatory. Compl. ¶ 15. Thus, Spider Labs has pled with sufficient particularity.

claim because the *fair use doctrine* enshrines an important First Amendment Protection. No. 10–CV–05022, 2011 WL 5444622 at *8, n. 6 (N.D. Calif. 2011) (emphasis added). Doe does not claim that any of his affirmative defenses "enshrine an important First Amendment protection" and therefore there is no legal support for Doe's claim that this Court need consider his affirmative defenses in determining whether Spider Labs has made a *prima facie* showing of its defamation claim. Notwithstanding the absence of any supporting law, considering Doe's affirmative defenses does not change the determination that Spider Labs has met the burden of establishing a *prima facie* claim for defamation.

### (1)    Doe's emails were not opinion statements for purposes of a defamation analysis.

Doe argues that Spider Labs's defamation claim is not viable because the statements put forth in his emails were "pure opinion," not statements of fact. (MPA 9:26.) Whether a statement is opinion or fact for defamation purposes depends on several factors, including (1) whether its meaning is unambiguous; (2) whether it can be proven true or false; (3) its context; and (4) its "broader social context." *Grayson v. Ressler & Ressler*, 271 F.Supp.3d 501, 516 (S.D.N.Y. 2017) (finding three of four statements alleged by plaintiff were actionable defamation). However, when a statement makes criminal accusations or "'derogation[s] of professional integrity in terms subject to factual verification, [however,] the borderline between fact and opinion has been crossed'." *Id.* (citations omitted). Opinion implying facts unknown to the recipient is actionable defamation, but opinion citing facts upon which it relies is not. *Id.*

Various assertions Doe makes in his emails that Spider Labs maintains are false—about Spider's use of artificial intelligence, that SpiderAF cannot detect fraud, that there is nothing behind Spider Labs's technology—are capable of being proven true or false. Further, Doe continually implies that he is relying on facts unknown to the reader to form his opinion. (*See, e.g.*, Exs. A–B to Doirado Decl. ("In my article, I talk about … how they claim their technology is artificial intelligence based (which it isn't.").) All of the foregoing strongly supports a finding that Doe's statements were actionable defamation, not "pure opinion." At a minimum, Spider

4831-9454-6890.7

Labs is entitled to know Doe's identity in order to test the validity of the argument that the statements were truly opinion. Among other things, Doe's identity is critical to whether he knew of the falsity or probable falsity of the facts underlying his so-called opinions. As discovery is critical to Doe's affirmative defense, the Motion to Quash must be denied so that both Parties can engage in substantive discovery.

The cases Doe relies on do not salvage his arguments. Doe points to cases finding that statements calling a plaintiff a "fraud" and a "liar" or the plaintiff's conduct "extortion, manipulation, fraud, and deceit" were not actionable as defamation because the context and speculative nature of the statements "signal[] the reader that what is said is opinion, not fact" or could not be proven false. (MPA 10:12-18) (*citing Sabratek Corp. v. Keyser*, at *6; *Small Bus. Bodyguard Inc. v. House of Moxie, Inc.*, 230 F.Supp.3d 290, 312 (S.D.N.Y. 2017).) However, Doe does not offer this Court any persuasive reason to conclude that he signaled to the recipients of his emails that his statements were opinions. To the contrary, Doe in his emails cites to his own efforts and the efforts of his "team of engineers" to validate his statements that Spider Labs's "clients aren't actually protected from fraud," that Spider Labs is "defrauding" its clients, and that "there's nothing behind [Spider Labs's] platform." (Exs. A–E to Doirado Decl.) Thus, Doe goes out of his way to make his statements appear as *fact* not opinion.[6]

In contrast to an opinion column in a newspaper, Doe's email creates an expectation in the reader that he intends the blog article to be an informative exposé on Spider Labs's inadequacies. *Egiazaryan* draws "sharp contrast" between "editorial formats" and "news reporting." *Egiazaryan v. Zalmayev*, 880 F.Supp.2d 494, 507 (S.D.N.Y. 2012). Similarly, though New York courts *often* protect statements made in online forums, the Eastern District of New York made clear that those "cases do not stand for the proposition that no comments posted on an online forum can ever be found to be defamatory." *Bellavia Blatt & Crossett, P.C. v. Kel &*

---

[6] Doe goes even further and attempts to argue that his opinions were also not actionable because they were made in good faith and supported by facts. (MPA 11:21-22.) Not only does Doe's argument go to the merits of his defense—and is therefore not relevant at this stage—it emphasizes the importance of discovery to Doe's defenses. Given that Doe's defenses are fact-heavy, they actually support a denial of the Motion to Quash so that discovery can occur.

4831-9454-6890.7

*Partners LLC*, 151 F. Supp. 3d 287 (E.D.N.Y. 2015).  Thus, even in the context of the internet, "an email sent by a blogger requesting an interview" could just as easily signal to the recipient that the sender was a reporter writing a fact-based news article as they could signal that he was an opinion writer, particularly when that "blogger" calls his piece an "article" and describes the factual assertions made in it.  (MPA 11:7-8; Exs. A-E to Doirado Decl.)  Furthermore, by masking his identity—which Doe admits he did—Doe hid any indicators that he might have a conflict of interest skewing his viewpoint.  (Exs. A-E to Doirado Decl.; Doe Decl. ¶ 9.)

### (2) Additional discovery is necessary for the Court to ascertain the truth or falsity of Doe's statements.

After touting that his statements were "pure opinion" and therefore could not form the basis of a claim of defamation, Doe paradoxically argues that his statements were "substantially true" and therefore not actionable.  (MPA 12:1.)  As an initial matter, Doe's argument is entirely factual.    Among  other  things,  Doe  touts  his  "independent  investigation"  and  that  he "independently conducted his own tests of Spider Labs's technology."  (MPA 12:15-16.)  Thus, Doe repeatedly interjects factual conclusions into his assertions—conclusions that Spider Labs conveniently cannot challenge because *Doe is seeking to prevent Spider Labs from taking discovery*.  Doe cannot rely on questions of fact as a basis to support his Motion to Quash. Moreover, Doe's "substantial truth" defense goes directly to the merits of Spider Labs's claim, not whether Spider Labs has met the burden of establishing the *prima facie* elements of a claim for defamation.  Accordingly, this Court should completely disregard the argument.

Notwithstanding the foregoing, if the Court is inclined to consider Doe's "substantial truth" defense, Doe fails to adduce sufficient evidence.  The adequacy of Doe's investigative efforts is not at issue—it is the truthfulness of his statements.  Not only does Spider Labs vehemently deny the truthfulness of the statements it asserts are defamatory[7], Spider Labs has no way to test *any* of the facts upon which Doe bases his "substantial truth" defense.  Furthermore,

---

[7] Spider Labs has not alleged that the statement regarding its MRC accreditation, which Doe continuously points to, was defamatory.  (Compl. ¶ 15.)  Spider Labs has conceded that the English translation of its press release was incorrect and took steps to correct it in the public sphere before filing this lawsuit.  (Doirado Decl. ¶¶ 29-31.)

holding up one statement in an email as substantially true does not cleanse the others of their defamatory nature. Finally, Doe cites no law holding that a "reasonable and good faith belief" is equivalent to substantial truth, so his argument as to his "belief" is irrelevant. (Mot. 12:20.) Under the *prima facie* standard, Doe has not provided sufficient evidence to overcome the viability of Spider Labs's defamation claim via the defense of substantial truth.

### (3) Spider Labs is not a public figure, and evidence exists to support a finding of actual malice.

Contrary to Doe's assertion, Spider Labs is not a limited-purpose public figure. The Supreme Court has held that, in defamation actions, "otherwise private individuals [may be] considered public figures 'for a limited range of issues.'" *Biro v. Conde Nast*, 963 F.Supp.2d 255, 270 (S.D.N.Y. 2013) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 335-36 (1974)). Under a four-part test adopted by the Second Circuit for determining whether this defense applies to a particular plaintiff, a defendant must establish that a plaintiff has:

> (1) successfully invited public attention to his views in an effort to influence others prior to the incident that is the subject of litigation; (2) voluntarily injected himself into a public controversy related to the subject of the litigation; (3) assumed a position of prominence in the public controversy; and (4) maintained regular and continuing access to the media.

*Enigma Software Grp. USA v. Bleeping Computer LLC*, 194 F.Supp.3d 263, 288 (S.D.N.Y. 2016) (quoting *Lerman v. Flynt Distrib. Co.*, 745 F.2d 123, 136-37 (2d Cir. 1984); *accord Biro*, 963 F.Supp.2d at 270. A "public controversy" is any topic of which "'sizeable segments of society have different, strongly held views'." *Biro*, 963 F.Supp.2d at 273 (quoting *Lerman*, 745 F.2d at 138). It must have been controversial at the time the plaintiff entered the conversation. *Id.* (citing *Calvin Klein Trademark Trust v. Wachner*, 129 F.Supp.2d 248, 252 (S.D.N.Y. 2001) ("Prior to plaintiffs' making these statements, however, there was no 'public controversy' over the issues of the quality of Warnaco goods or non-Calvin-Klein goods being passed off as Calvin Klein goods.")).

In *Enigma Software*, the Court found that the defendant had not sufficiently identified a

public controversy where it asserted that "[t]he public controversy at issue here is Plaintiff's deceptive business practices, the danger its software poses, and Plaintiff's harassment of those who criticize it" but failed to provide evidence that "'sizeable segments of society" had strong views about any one of them.  194 F.Supp.3d at 289 (quoting *Lerman*, 745 F.2d at 138).  The Court further found that the defendant failed to allege any facts suggesting a public position taken by the plaintiff on the "integrity of its business practices or the quality of its products," and that the plaintiff's "sales and recognition" and alleged litigiousness did not show it had injected itself into a controversy, either.  *Id.*

At the outset, this stage of the litigation is much too early for the Court to adjudicate whether Spider Labs is a public figure for a limited purpose.  In *Biro*, the Court noted that it is permissible, but not required, for a court to determine whether a plaintiff is a public figure in considering a motion to dismiss, *if* the determination can be made based on the pleadings alone. 963 F.Supp.2d at 270.  Doe has not presented sufficient evidence for the Court to make that determination at this stage.  Doe continues to point to a press release issued by Spider Labs which it later acknowledged contained a translation error.  (Doirado Decl. ¶¶ 29-31.)  Doe cannot cherry-pick one assertion from an email that was riddled with claims about Spider Labs and its technology, particularly when that assertion is not one that Spider Labs has alleged as defamatory. Doe does not present any evidence supporting the factors of the four-part test as relate to the numerous defamatory statements in his emails.  (MPA 13:13-18.)

Even assuming *arguendo* that Spider Labs invited public attention by publishing the press release at all, Doe has presented insufficient evidence to support a finding that a public controversy existed at the time of publication.  (*Id.*)  In fact, Doe presents no evidence that a public controversy about Spider Labs exists at all, other than the one drummed up by him.  (MPA 13:15-16 ("[Spider Labs] is at the center of the controversy surrounding its false statements").)  Like the defendant in *Enigma Software*, Doe has failed to identify any "sizeable segment of society," other than himself, that is concerned about the alleged problems with Spider Labs. Further, Doe has failed to identify any ways in which Spider Labs has injected itself into a

controversy related to the statements alleged as defamatory by Spider Labs.  At most, Spider Labs issued a press release related generally to the quality of its products, but again, Doe has presented no evidence that a controversy existed regarding the quality at the time.  Doe's argument that Spider Labs "regularly issues press releases, operates its own blog, presents at industry events, and seeks attention for [its] products" is similar to the defendant's argument in *Enigma Software* that the plaintiff's general success constituted injecting itself into a public controversy.  (MPA 13:16-18.)  In sum, Doe has failed to present sufficient evidence supporting a finding that Spider Labs is a limited-purpose public figure.

Even if the Court were to accept Doe's argument at this stage that Spider Labs is a limited-purpose public figure, Spider Labs has presented sufficient *prima facie* evidence of actual malice on Doe's part to maintain its claim.  Actual malice requires a showing of intentional or at least recklessness.  *Biro*, 963 F.Supp.2d at 276.  Proving actual malice is a "heavy burden," and a pleading must be both plausible and supported by factual allegations.  *Id.* at 278-79.  But Spider Labs has met it.  First, Spider Labs pled in its Complaint that "Doe intentionally, or with negligent disregard for their falsity and without privilege or authorization, published false and defamatory statements concerning Spider Labs to multiple Spider Labs' (*sic*) customers."  (Compl. ¶ 32.)  Second, in Doe's emails, he expressly stated that his goal was "to expose them," referring to Spider Labs, adding in at least one of them: "I really think you should find a different vendor!".  (*See, e.g.*, Ex. B to Doirado Decl.)  Third, it is undisputed that the *only* company Doe identified and pursued while preparing his unpublished blog and the only company whose clients he contacted was Spider Labs.  Finally, in its own internal investigation, Spider Labs concluded that Doe contacted its customers mere minutes after reviewing the ways in which they implemented Spider Labs's products on Spider's website, not after a lengthy investigation.  (Doirado Decl. ¶ 25.)  The foregoing supports a *prima facie* finding that Doe *targeted* Spider Labs and, in his haste to attack Spider Labs in the eyes of its customers, showed a reckless disregard for the truth or falsity of his assertions.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### (4) Doe's Statements are not matters of public concern, but there is evidence supporting gross irresponsibility.

"[A] private-figure plaintiff is involved in a matter of public concern if the speech at issue 'is related to a 'matter of political, social, or other concern to the community or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public'." *Blair v. Inside Ed. Prods.*, 7 F.Supp.3d 348, 357 (S.D.N.Y. 2014).  Where a statement is found to relate to a matter of public concern, the plaintiff must show that the defendants "'acted in a grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties.'" *Bloom v. Fox News of Los Angeles*, 528 F.Supp.2d 69, 75-76 (E.D.N.Y. 2007).

Here, the specific topics Doe references in his emails—the quality of Spider Labs's product and its professional integrity—are not matters of "general interest," and Doe presents no evidence as such.  Instead, Doe relies on the alleged importance of Ad Fraud to justify his claim that he was addressing matters of public concern.  This Court need not determine whether Ad Fraud on the Internet is a subject of general interest as Doe's statements in his emails—the only statements at issue in Spider Labs's claim for defamation—did not address Ad Fraud.

Further, even if the Court were to agree with Doe's argument that Doe's emails relate to a matter of public concern, Doe has irresponsibly shared his allegations with Spider Labs's customers without conducting a valid test of Spider's products, citing reliable sources, giving Spider Labs an opportunity to comment, or verifying the validity of his statements.  (Exs. A–F to Doirado Decl.)  Therefore, there is at least a question of fact as to the manner in which Doe acted, and Doe has presented no indisputable evidence that is dispositive on this question.  Accordingly, Doe has not presented sufficient evidence for a public concern defense to overcome Spider Labs's claim for defamation.

### 2. Sufficient Evidence Exists to Support Claims of Tortious Interference with Contractual Relationships and Prospective Business Advantage.

Rather than examine the elements required to make out claims for tortious business interference, Doe characterizes Spider Labs's claims as a mere re-hash of its defamation claim

and rests on his defamation arguments.  (MPA 16:10.)  Doe's arguments are not well taken.

Under New York law, to prevail on claims for both tortious interference with a contractual relationship and tortious interference with a prospective business advantage, a plaintiff must show "(1) a business relationship between Plaintiffs and a third party (2) that the Defendants knew of and intentionally interfered with (3) solely out of malice or through the use of dishonest, unfair, or improper means (4) thereby injuring Plaintiffs."  *O.E.M. Glass Network, Inc. v. Mygrant Glass Co.*, 436 F.Supp.3d 576, 594 (E.D.N.Y. 2020).  "[T]he conduct must be 'directed not at the plaintiff itself, but at the party with which the plaintiff has or seeks to have a relationship.'"  *Puebla Palomo v. DeMaio*, 403 F.Supp.3d 42, 64 (N.D.N.Y. 2019).

Here, Spider Labs has established it had preexisting relationships with the customers emailed by Doe.  (Doirado Decl. ¶¶ 21, 23.)  By emailing those customers, explicitly telling at least one of them to "find a different vendor," and sowing doubt about Spider Labs's integrity and the efficacy of its technology, Doe intentionally interfered with those relationships.  (Exs. A-E to Doirado Decl.)  The third element is met because Doe's conduct constituted the independent tort of defamation.  The fourth element is met because Doe's actions have harmed Spider Lab's credibility with those customers he contacted and whom Spider Labs had to contact in the process of investigating Doe's actions.  Finally, Doe's actions were directed at the customers, who are third parties with whom plaintiff has and hopes to continue to have business relationships.  Therefore, Spider Labs has a viable *prima facie* claim for tortious interference with contractual relationships and prospective business advantage.

The sole reason Doe offers this Court to lump Spider Labs's interference claims in with its defamation claim is that he alleges, without support, that the interference claims are based on the injury to its reputation.  (MPA 16:16.)  Doe conveniently ignores that he attacked the *efficacy* of Spider Lab's technology, and in particular its technical performance.  Further, Doe *targeted* Spider Labs and its customers.  On their face, Doe's actions support a finding that he was attempting to convince Spider Labs's customers to cease working with Spider Labs, not because of Spider Labs's reputation, but for business performance reasons.  While Doe's statements

1    certainly defamed Spider Labs, that is not the limit of Spider Labs's claims.

2            3.        **Spider Labs Has a Viable Claim for Injunctive Relief.**

3            In federal court, plaintiffs seeking a permanent injunction must show "(1) a likelihood of

4    irreparable harm; (2) either a likelihood of success on the merits or sufficiently serious questions

5    as to the merits plus a balance of hardships that tips decidedly in their favor; (3) that the balance

6    of hardships tips in their favor regardless of the likelihood of success; and (4) that an injunction

7    is in the public interest." *General Mills, Inc. v. Chobani, LLC*, 158 F.Supp.3d 106, 115 (N.D.N.Y.

8    2016).  In *General Mills*, the Court held that General Mills had sufficiently demonstrated a

9    likelihood of success on its false advertising claim and that irreparable harm was likely to occur

10   without an injunction.  *Id.* at 119-21.  The Court held that Chobani, on the other hand, did not

11   have a legitimate interest in "perpetuating false claims … that specifically single out a

12   competitor's product" and that the public has an interest in "preventing false or misleading

13   advertising." *Id.* at 121.  The Second Circuit has found the irreparable harm element is met when

14   a harm cannot be remedied without injunctive relief or when "a loss is difficult to replace or

15   difficult to measure." *Salinger v. Colting*, 607 F.3d 68, 81 (2d Cir. 2010).

16           Spider Labs has demonstrated evidence supporting each of the elements for injunctive

17   relief.  Primarily, monetary damages will not repair the harm already caused to Spider Labs's

18   reputation and business relationships, and they will not prevent the same harm from occurring

19   again.  At this stage, the Court has only Doe's word to go on that he "has 'decided not to launch

20   [his] Blog." (MPA 17:24-25.)  All other evidence—the fact that Doe's emails explicitly discuss

21   an article he plans to publish, his purchase of the domain name www.fightclickfraud.com, and

22   the fact that he continues to hide his identity—indicate that he plans to continue to anonymously

23   communicate false and defamatory statements about Spider Labs.  (Exs. A-E to Doirado Decl.;

24   Doe Decl. ¶¶ 6-7, 9.)  Spider Labs's damages are also difficult to measure at this stage in the

25   litigation.  Spider Labs has also demonstrated a likelihood of success on the merits.  Doe has not

26   sufficiently demonstrated a hardship to himself that would outweigh that incurred by Spider Labs,

27   particularly if it is in fact true that Doe, like Chobani was to General Mills, is a competitor of

28

4831-9454-6890.7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Spider Labs.  Finally, the public has an interest in enjoining defamation, the publication of false statements, and improper business interference.  Therefore, Spider Labs has established a *prima facie* basis for seeking permanent injunctive relief against Doe.

4.    **The Balance of the Hardships Strongly Favor Spider Labs.**

In his final argument for quashing the Subpoenas, Doe argues the Subpoenas "must be quashed because Doe's interest in speaking openly and anonymously about interests of public importance outweighs whatever interest Spider Labs has in pursuing this lawsuit to punish Does for speaking out against Spider Labs."  (MPA 18:6-8.)  Doe's self-serving characterization of the hardship each Party faces underscores why the Motion to Quash must be denied.

First, the undisputed facts show that Doe did not "speak out against Spider Labs" nor did he speak "openly" or publicly.  Instead, he sent private emails to Spider Labs's customers—and *only* Spider Labs's customers—that were filled with false attacks on Spider Labs's integrity and the efficacy of its technology.  Second, Doe's pretext for his emails—that he is an amateur blogger who *intended* to publish a blog—does not support Doe's position because he not only did not publish his article about Spider Labs, he never published any article about anything or anyone. Doe has never used his voice and therefore cannot claim to be silenced.  Moreover, Doe does not establish any reason why the loss of his anonymity would harm him.  He claims to require anonymity so that he can maintain the perception of objectivity—a self-serving but irrelevant goal given that he has not spoken publicly to anyone about anything.  Doe fails to establish any harm that he will suffer if he loses his anonymity.

In contrast, through the Motion to Quash, Doe is asking this Court to deprive Spider Labs of the opportunity to have its day in court.  Unlike Doe, who will still have the opportunity to defend himself if the Motion to Quash is denied, Spider Labs will not be able to proceed with this lawsuit if it cannot determine Doe's identity.  In essence, Doe is asking this Court to allow him to target Spider Labs without fear of being held accountable for his actions.  While every party that has engaged in defamation would certainly want the same outcome, forcing Doe to defend his actions is not a hardship.  Depriving Spider Labs of *any* recourse at this initial stage based on

PLAINTIFF SPIDER LABS, LTD.'S RESPONSE IN OPPOSITION TO MOTION TO QUASH SUBPOENAS ISSUED TO GOOGLE LLC AND LINKEDIN
CORPORATION AND MEMORANDUM IN SUPPORT THEREOF
Case No. 5:20-mc-80141-VKD

4831-9454-6890.7

Doe's invocation of the First Amendment—notwithstanding his undisputed failure to engage in any public speech and notwithstanding his tacit admission to working in a prominent capacity in Spider Lab's industry—would be a hardship to Spider Labs, and is the *precise* outcome the Ninth Circuit sought to avoid in upholding the district court's decision to require disclosure of identities in *In re Anonymous Online*, 661 F.3d at 1177.

      **D.**      **Doe Should Not Be Awarded His Attorney Fees.**

In his request for attorney fees, Doe carefully omits from his citation to Cal. Code Civ. Proc. § 1987.2(c) the portion that states that an award is only appropriate if, among other things, "the underlying action arises from the moving party's exercise of free speech rights on the Internet and the respondent has failed to make a prima facie showing of a cause of action."

As set forth *infra*, it is undisputed that Doe's "free speech rights on the Internet" are not at issue because *Doe did not publish his speech on the Internet*. He merely sent private communications to Spider Labs's customers. Moreover, Spider Labs has demonstrated a prima facie basis for its claims, and the Southern District of New York has already ruled as such. (New York Order 2.) Therefore, on its face, Cal. Code Civ. Proc. § 1987.2(c) does not apply. Doe's request for fees must be denied.

**IV.**      **CONCLUSION.**

For the foregoing reasons, Doe's Motion to Quash must be denied.

Dated:  September 23, 2020.          KUTAK ROCK LLP

                              By: */s/ Chad T. Nitta*
                                 Rebecca L. Wilson (SBN 257613)
                                 Chad T. Nitta (*appearance pro hac vice*)
                                 Jill E. Beathard (*appearance pro hac vice*)

                                 *ATTORNEYS FOR PLAINTIFF*
                                 *Spider Labs, Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that on September 23, 2020, I electronically filed the foregoing **PLAINTIFF SPIDER LABS, LTD.'S RESPONSE IN OPPOSITION TO JOHN DOE'S MOTION TO QUASH SUBPOENAS ISSUED TO GOOGLE LLC AND LINKEDIN CORPORATION AND MEMORANDUM IN SUPPORT THEREOF** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Cassandra L. Gaedt-Sheckter, SBN 280969
Wesley Sze, SBN 306715
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94303
Tel:  (650) 849-5300
cgaedt@gibsondunn.com
wsze@gibsondunn.com
*Attorneys for John Doe*

Mitchell A. Karlan (*appearance pro hac vice*)
Avi Weitzman (*appearance pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel: (212) 351-4000
mkarlan@gibsondunn.com
aweitzman@gibsondunn.com
*Attorneys for John Doe*


KUTAK ROCK LLP

By:*s/ Chad T. Nitta* _____
   Rebecca L. Wilson (CA Bar No. 257613)
   Chad T. Nitta (*appearance pro hac vice*)
   Jill E. Beathard (*appearance pro hac vice*

4831-9454-6890.7