UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

IN RE RULE 45 SUBPOENAS ISSUED TO GOOGLE LLC AND LINKEDIN CORPORATION DATED JULY 23, 2020

Case No. 20-mc-80141-VKD

**ORDER GRANTING DOE'S MOTION TO QUASH**

Re: Dkt. No. 1

In this proceeding, John Doe moves to quash respondent Spider Labs, Ltd.'s ("Spider Labs") subpoenas to Google LLC ("Google") and LinkedIn Corp. ("LinkedIn"). Dkt. No. 19. The Court heard oral argument on Doe's motion on October 27, 2020. Dkt. No. 24. At the Court's request, the parties submitted supplemental briefing regarding the application of collateral estoppel and Doe's right to invoke the First Amendment. Dkt. Nos. 25, 29, 30. Having considered the parties' papers and the arguments presented at the hearing, the Court grants Doe's motion to quash and denies his request for attorneys' fees and costs.

**I.     BACKGROUND**

This proceeding arises out of an action Spider Labs filed against Doe in the Southern District of New York, *Spider Labs, Ltd. v. Doe*, No. 1:20-cv-05457-LAP (S.D.N.Y.). Spider Labs is a Japanese company that offers products and services intended to combat Internet advertising fraud—specifically, activity that artificially inflates the number of "clicks" that online advertisements receive in a pay-per-click advertising arrangement ("Ad Fraud"). Dkt. No. 20-1 ¶¶ 3, 10. SpiderAF is Spider Labs' primary anti-Ad Fraud offering. *Id.* ¶ 12.

Doe's true identity is unknown. He describes himself as a computer scientist interested in

combatting Ad Fraud. Dkt. No. 19-1 ¶¶ 4-5. Sometime before February 2020, Doe says he decided to start a blog to educate the public about Ad Fraud and misleading advertising practices. Dkt. No. 19-1 ¶¶ 6-7. On February 25, 2020, Doe registered a domain name for the blog and set up a Google G Suite Business email subscription using his true identity. *Id.* ¶¶ 7-8. Doe then assumed a pseudonym, "Jeff Katzenberg," for purposes of his blogging activities, purportedly to protect his privacy, to avoid having his activities associated with his employer, and to enhance his credibility as a blogger. *Id.* ¶ 9.

In March and April 2020, Doe says he began investigating and preparing potential blog articles. *Id.* ¶ 11. On June 10, 2020, Doe discovered a press release from Spider Labs, then operating as Phybbit Ltd. ("Phybbit"). *Id.* ¶ 12. The press release stated, among other things: that Phybbit was "the only Asian vendor certified by the international Trustworthy Accountability Group (TAG)"; that Phybbit was "accredited by the US-based Media Rating Council (MRC)"; and that the SpiderAF product uses artificial intelligence or ("AI") to detect online advertising fraud. *Id.* ¶ 13, Ex. 3. Doe was aware of other TAG-certified Asian vendors besides Phybbit, and he believed that the statement in the press release that Phybbit was the only one was false and misleading. *Id.* ¶ 14. Based on that belief, he decided to investigate Phybbit's other claims concerning MRC accreditation and SpiderAF's use of AI. *Id.* ¶ 15.

According to Doe, he first searched the MRC's website and found that Phybbit was not listed as an accredited company. *Id.* ¶ 17. He therefore concluded that Phybbit's claim about MRC accreditation was also false and misleading. *Id.* With respect to Phybbit's claims about SpiderAF, Doe says he contacted a Japanese source in the anti-Ad Fraud industry, who informed Doe that the source understood that Phybbit used a "blacklist" of IP addresses to attempt to identify fraud as opposed to more sophisticated AI or machine learning techniques. *Id.* ¶ 19. Doe then decided to test the efficacy of SpiderAF by visiting the websites of Phybbit's customers. *Id.* ¶¶ 19-29. Doe says he ran tests designed to mimic behavior commonly considered suspicious in the anti-Ad Fraud industry, such as using a virtual private network to mask his IP address and an emulator to misrepresent the type of device being used. *Id.* ¶¶ 20, 27-29. Even while mimicking suspicious behavior, Doe found he was able to continue viewing and clicking on advertisements.

*Id.* ¶¶ 27-30. Believing that any effective anti-Ad Fraud service should have been able to detect his suspicious behavior and block him from accessing the ads, Doe concluded that Phybbit's failure to do so meant Spider AF did not work as advertised and could not be "AI-driven." *Id.* ¶¶ 29-30.

Doe says he decided to write a blog article about what he believed were false and misleading statements from Phybbit. *Id.* ¶ 31. As part of the writing process, he used his Jeff Katzenberg Google email account to contact 13 Phybbit customers on June 14, 2020.[1] *Id.* ¶¶ 31-32, 34. The emails, which were substantially similar to one another, stated:

> Dear [Phybbit customer contact],
>
> My name is Jeff, and I run a new blog about preventing ad fraud. I'm currently running an article about a fraudulent Japanese company called Phybbit/SpiderAF that I believe might have committed fraud against you and [Phybbit customer name].
>
> In my article, I talk about how they tell customers that they are MRC accredited, even though they aren't, and how they claim their technology is artificial intelligence based (which it isn't). I'm also talking about how they are defrauding their clients, like you guys, and how all of their clients aren't actually protected from fraud. We hired a team of engineers to test it out and discovered there's nothing behind their platform, and ran a bunch of campaigns with their clients (SSPs and DSPs) and discovered that it couldn't detect fraud.
>
> I saw a press release saying that you guys are their clients and I wanted to interview you, like other people, on whether or not you knew that they aren't actually MRC accredited even though they claim they are.
>
> Furthermore, we're looking to do a massive press release in Japan, in Japanese, to expose them.
>
> Are you perhaps free this week to have a call and provide a quote for the article?
>
> Best,
>
> Jeff

*Id.* ¶ 33, Exs. 10-11; *see also* Dkt. No. 20-1, Exs. A-E. In his email to ValueCommerce, Doe

---

[1] Spider Labs argues that Doe did not actually perform any kind of investigation because its records indicate that Doe visited the Spider Labs website to identify Spider Labs customers and then sent his emails to them within minutes. Dkt. No. 20 at 6; Dkt. No. 20-1 ¶¶ 19-25.

3

additionally stated, "I really think you should find a different vendor!" Dkt. No. 19-1, Ex. 10. Doe also contacted MRC about Phybbit the same day, stating "I contacted several of their clients (the ones specified on their sites) including Fluct, ValueCommerce, Zucks and others, and all have indicated that one of the main reasons for them in acquiring the Phybbit services was their claim that they are MRC accredited." Dkt. No. 20-1, Ex. F.

On June 15, 2020, one of its customers alerted Phybbit to the email the customer received from Doe. *Id.* ¶ 16. MRC also contacted Phybbit to inquire about Phybbit's press release asserting that it was MRC-accredited. *Id.* ¶ 28. Phybbit investigated the allegations in Doe's emails and discovered that the press release's reference to "accreditation" was the result of an erroneous translation from Japanese to English. *Id.* ¶ 30. On June 17, 2020, Phybbit issued a press release apologizing for the error. *Id.* ¶ 31; Dkt. No. 19-1 ¶ 34, Ex. 12. The press release further warned customers of "suspicious emails" targeting SpiderAF's "credibility," suggesting that these emails could be part of a phishing attempt. Dkt. No. 19-1, Ex. 12. Shortly thereafter, Phybbit changed its name to Spider Labs. *Id.*, Exs. 15-16; *see also* Dkt. No. 20-1 ¶¶ 14-15.

On July 16, 2020, Spider Labs sued Doe in the Southern District of New York for defamation per se, tortious interference with prospective economic advantage, tortious interference with a contractual relationship, and injunctive relief. *Spider Labs, Ltd. v. Doe*, No. 1:20-cv-05457-LAP, Dkt. No. 1 (S.D.N.Y. July 16, 2020). Among other things, the complaint alleges that Spider Labs, formerly known as Phybbit, is a Japanese corporation and that Doe lives within the Southern District of New York. *Id.* ¶¶ 1-4.

Doe discovered that Spider Labs had filed the underlying action against him shortly thereafter. Dkt. No. 19-1 ¶ 45; Dkt. No. 20-3 ¶ 4, Ex. 1. At that time, he had not (and still has not) launched a blog or published any articles. On July 20, 2020, the New York court granted Spider Labs's ex parte motion for expedited discovery and permitted Spider Labs to serve Rule 45 subpoenas to determine Doe's true identity for purposes of service of process. *Spider Labs, Ltd. v. Doe*, No. 1:20-cv-05457-LAP, Dkt. No. 7 (S.D.N.Y. July 20, 2020). Thereafter, Spider Labs issued subpoenas to Google and LinkedIn on July 23, 2020 seeking information concerning Doe's identity and contact information. Dkt. No. 2, Exs. C-D. The subpoena to Google seeks the

following:

> 1. Documents setting forth all Identifying Information that John Doe provided to [Google] or was collected by [Google] related to the creation or use of the [Jeff Katzenberg Google] Email Address.
>
> 2. Documents setting forth all Identifying Information in [Google's] possession or control as a result of John Doe creating or using the [Jeff Katzenberg Google] Email Address.

*Id.*, Ex. C. Similarly, the subpoena to LinkedIn seeks the following:

> 1. Documents setting forth all Identifying Information that John Doe provided to [LinkedIn] or was collected by [LinkedIn] related to the IP Address that accessed Spider's LinkedIn.
>
> 2. Documents setting forth all Identifying Information in [LinkedIn's] possession or control as a result of John Doe accessing Spider's LinkedIn.

*Id.*, Ex. D. Both subpoenas list Spider Labs's counsel's office in Denver, Colorado as the place of compliance. *Id.*, Exs. C and D. Spider Labs also issued similar subpoenas to GoDaddy.com LLC ("GoDaddy") and Charter Communications, Inc. in the Districts of Arizona and Colorado, respectively, which Doe also moved to quash. *Spider Labs, Ltd. v. Doe*, No. 1:20-cv-05457-LAP, Dkt. No. 12 (S.D.N.Y. July 20, 2020); *Spider Labs Ltd. v. Doe*, No. MC-20-00039-PHX-SPL, Dkt. No. 1 (D. Ariz. Aug. 13, 2020); *Spider Labs Ltd. v. Doe*, 1:20-mc-00145-RM, Dkt. No. 1 (D. Colo. Aug. 13, 2020).

Doe says that he decided not to complete his article about Spider Labs and not to launch his blog website. Dkt. No. 19-1 ¶ 46. He says the lawsuit and resulting possibility that his true identity will be revealed have deterred him from engaging in such activity. *Id.* ¶¶ 46-48. In the meantime, Doe contacted counsel for Spider Labs, apparently seeking to resolve the underlying action. Dkt. No. 20-4 ¶ 4, Ex. A at 1–2 ("I very much would like to put this behind us and you and I both know an American citizen residing in Tokyo would win . . . ."). On August 13, 2020, Doe filed the motion to quash the subpoenas now before the Court. Dkt. No. 1.

On October 23, 2020, while Doe's motion before this Court was pending, the District of Arizona granted Doe's motion to quash the subpoena to GoDaddy. *Spider Labs Ltd. v. Doe*, No. MC-20-00039-PHX-SPL, 2020 WL 6262397 (D. Ariz. Oct. 23, 2020). On November 30, 2020, the District of Arizona denied Spider Labs's motion for reconsideration. *Spider Labs Ltd. v. Doe*,

1   No. MC-20-00039-PHX-SPL, Dkt. No. 20 (D. Ariz. Nov. 30, 2020).

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 45 governs discovery of non-parties.  The scope of allowable discovery under Rule 45 is the same as the scope of discovery permitted under Rule 26(b).  *Beaver Cty. Employers Ret. Fund v. Tile Shop Holdings, Inc.*, No. 3:16-mc-80062-JSC, 2016 WL 3162218, at *2 (N.D. Cal. June 7, 2016) (citing Fed. R. Civ. P. 45 advisory comm's note (1970); Fed. R. Civ. P. 34(a)).  Rule 26 permits discovery "regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).

The Court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)."  Fed. R. Civ. P. 26(b)(2)(C).  Rule 45 further provides that "the court for the district where compliance is required must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden."  Fed. R. Civ. P. 45(d)(3)(A).

Generally, "a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action, unless the objecting party claims some personal right or privilege with regard to the documents sought."  *Drummond Co., Inc. v. Collingsworth*, Nos. 13–mc–80169–JST (JCS), 13–mc–80171–JST (JCS), 2013 WL 6074157, at *15 (N.D. Cal. Nov. 18, 2013) (quoting 9A Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. § 2459 (3d ed. 2008)).  If good cause is shown, a court may "issue an order to protect a party or person from annoyance,

United States District Court
Northern District of California

embarrassment, oppression, or undue burden or expense, including . . . forbidding the disclosure or discovery." Fed. R. Civ. P. 26(c)(1)(A).

The moving party bears the burden of persuasion on a motion to quash, but the party issuing the subpoena must demonstrate that the discovery is relevant. *See Chevron Corp. v. Donziger*, No. 3:12-mc-80237-CRB, 2013 WL 4536808, at *4 (N.D. Cal. Aug. 22, 2013) (citation omitted); *see also Optimize Tech. Solutions, LLC v. Staples, Inc.*, No. 5:14-mc-80095-LHK, 2014 WL 1477651, at *2 (N.D. Cal. Apr. 14, 2014).

### III. DISCUSSION

Doe advances several arguments as to why the Court should quash Spider Labs's subpoenas to Google and LinkedIn. First, Doe contends that the subpoenas should be quashed for failure to comply with Rule 45(d)(3)(A). Second, Doe says the subpoenas violate the Stored Communications Act. Third, Doe argues that because the subpoenas seek documents revealing his identity, they violate his First Amendment right to anonymous speech, and that this Court is collaterally estopped by the District of Arizona's order quashing the GoDaddy subpoena from finding otherwise.

The Court addresses each argument in turn. In addition, the Court considers Doe's request for attorneys' fees and costs pursuant to California Code of Civil Procedure § 1987.2(c).

#### A. Rule 45(d)(3)

Doe argues that the Court should quash the subpoenas for failure to comply with Rule 45(d)(3)(A). Dkt. No. 19 at 5 n.1. Rule 45(d)(3)(A)(ii) provides that the Court must quash or modify a subpoena that requires compliance beyond the geographical limits specified in Rule 45(c)—i.e., 100 miles from where the subpoenaed party lives or transacts business. The subpoenas here are directed to Google and LinkedIn. Google is headquartered in Mountain View, California, and LinkedIn is headquartered in Sunnyvale, California, but the subpoenas require production of documents in Denver, Colorado, well outside the permissible geographic limits. Dkt. No. 2, Exs. C-D.

Spider Labs does not address this defect in its opposition. *See* Dkt. No. 20. However, at the hearing, Spider Labs conceded that the subpoenas were deficient in this respect and stated that

although neither Google nor LinkedIn had objected on this basis, it would stipulate to a place of production within this District instead. Dkt. No. 28 at 6:5–7:25. Based on this representation, the Court will not quash the subpoenas for failure to comply with Rule 45(d)(3)(A).

### B. Stored Communications Act

Doe also argues briefly in a footnote that the Court should quash the subpoenas because the disclosures they require would violate the Stored Communications Act. Dkt. No. 19 at 5 n.1. Doe does not explain this objection. As the subpoenas do not seek the contents of any stored communications associated with the accounts at issue, they do not implicate the prohibitions of the Stored Communications Act. *See, e.g.*, *Optiver Australia Pty. Ltd. v. Tibra Trading Pty. Ltd.*, No. C 12-80242 EJD (PSG), 2013 WL 256771, at *2–3 (N.D. Cal. Jan. 23, 2013) (discussing prohibitions of Stored Communications Act, 18 U.S.C. § 2701 *et seq.*). The Court denies Doe's motion to quash on this ground.

### C. First Amendment Right to Anonymous Speech

The First Amendment protects the rights of individuals to speak anonymously. *Watchtower Bible & Tract Soc'y of New York v. Village of Stratton*, 536 U.S. 150, 166–67 (2002); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 341–42 (1995). But that right does not protect tortious, defamatory, or libelous speech. *USA Techs., Inc. v. Doe*, 713 F. Supp. 2d 901, 906 (N.D. Cal. 2010); *see also In re Anonymous Online Speakers*, 661 F.3d 1168, 1173 (9th Cir. 2011) ("The right to speak, whether anonymously or otherwise, is not unlimited, however, and the degree of scrutiny varies depending on the circumstances and the type of speech at issue.").

Here, Doe contends that his First Amendment right to anonymous speech requires quashing of the subpoenas. Dkt. No. 19 at 5–17. Spider Labs responds that First Amendment protection does not bar its claims against Doe for defamatory and tortious speech. Dkt. No. 20 at 8–10. The parties also dispute whether the District of Arizona's order quashing the subpoena to GoDaddy (which also seeks documents revealing Doe's true identity) compels a similar order from this Court under the doctrine of collateral estoppel.

The Court first considers whether and to what extent collateral estoppel applies to this dispute.

8

### 1. Application of collateral estoppel

On October 23, 2020, the District of Arizona granted Doe's motion to quash Spider Labs's subpoena to GoDaddy. *Spider Labs*, 2020 WL 6262397. The Arizona court found that Spider Labs failed to make a prima facie showing on all elements of its defamation claim and that this failure extended to all of other claims in the complaint.[2] *Id.* at *2. Spider Labs's subsequent motion to reconsider that ruling was denied.

Collateral estoppel, or issue preclusion, "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination," where resolution of the issue was "essential to the prior judgment." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). Estoppel applies when the following four conditions are met: "(1) the issue at stake was identical in both proceedings; (2) the issue was actually litigated and decided in the prior proceedings; (3) there was a full and fair opportunity to litigate the issue; and (4) the issue was necessary to decide the merits." *Janjua v. Neufeld*, 933 F.3d 1061, 1065 (9th Cir. 2019) (quoting *Oyeniran v. Holder*, 672 F.3d 800, 806 (9th Cir. 2012), *as amended* (May 3, 2012)) (internal quotation marks omitted). Doe asserts that all conditions necessary for collateral estoppel are met. Dkt. No. 29 at 2–3. Spider Labs contends that (1) the issues at stake are not identical between the two proceedings, and (2) the issue of Doe's standing to assert First Amendment protection was not actually litigated before or decided by the Arizona court.[3] Dkt. No. 30 at 8–10.

The Court agrees, in part, with Doe. With respect to the question of whether Spider Labs satisfied its burden to come forward with competent evidence showing a prima facie case of defamation, the Court finds that collateral estoppel applies. First, the principal issue presented to

---

[2] Spider Labs acknowledged at the hearing before this Court that all its other claims derived from its defamation claim. Dkt. No. 28 at 38:20–39:7.

[3] Spider Labs further argues that the issue of falsity as to its defamation claim was not fully litigated before the Arizona court because that court did not have the same evidence before it: a supplemental declaration from Spider Labs Chief Technology Officer Eurico Doraido, which Spider Labs submitted together with its supplemental brief. Dkt. No. 30-2. Doe objects to this declaration as violating Civil Local Rule 7-3(d) and requests that the Court strike it. Dkt. No. 31. Doe's objections are well-taken. The Court will not consider the supplemental Doraido declaration. In any event, "[t]he introduction of new evidence on a matter previously resolved is not an exception to collateral estoppel." *Oyeniran*, 672 F.3d at 807.

both this Court and the District of Arizona is whether Spider Labs made a prima facie showing on all elements of its defamation claim. Second, the parties actually litigated the question of Spider Labs's prima facie showing before the District of Arizona, and in so doing relied on briefing and argument that is largely identical to the briefing and argument before this Court.[4] *See, e.g.*, *Spider Labs Ltd. v. Doe*, No. MC-20-00039-PHX-SPL, Dkt. No. 12 at 2 n.1 (D. Ariz. Oct. 13, 2020) (acknowledging that "[s]ubstantively identical motions to quash" were filed before the District of Arizona and the Northern District of California and suggesting that the Arizona court should await a ruling in the California court). Third, although the District of Arizona did not hold a hearing on Doe's motion to quash, the parties had a full and fair opportunity to litigate the question in Arizona.[5] Fourth, the District of Arizona issued an order on the merits finding that Spider Labs did not make a prima facie showing of defamation and quashing Spider Labs's subpoena for that reason.

The parties do not dispute that resolution of a miscellaneous discovery proceeding ancillary to an underlying civil action may have collateral estoppel effect, even where multiple similar discovery disputes are litigated in parallel with one another and with the underlying action. The Court has been able to identify only a few courts that have considered this question, and those that have generally agree that collateral estoppel applies to ancillary discovery proceedings such as this one. *See, e.g.*, *Signature Mgmt. Team, LLC v. Doe*, No. 13–cv–14005, 2015 WL 1245861, at *4–7 (E.D. Mich. Mar. 18, 2015) (noting that the Sixth Circuit has held that that "an order by one federal district court on a discovery dispute is res judicata on that same issue in another federal district court that has concurrent jurisdiction of the discovery dispute") (internal citation and

---

[4] Spider Labs argues that Doe's motions to quash did not contain identical briefs or case law. Dkt. No. 30 at 5. While the motions are not verbatim replicas of one another, upon examination, the arguments and propositions for which various cases are cited are the same. At the hearing, Spider Labs acknowledged that the evidence submitted to both courts was identical and the arguments similar. Dkt. No. 28 at 42:13–43:2.

[5] Spider Labs asserts in its supplemental brief that "on the issue of whether Spider Labs presented competent evidence of the falsity of Doe's statements, Spider Labs presented additional argument and clarification during the hearing by this Court that was not considered by the Arizona court." Dkt. No. 30. However, the District of Arizona has since considered and rejected Spider Labs's motion for reconsideration, demonstrating that Spider Labs has now had ample opportunity to litigate the issue.

quotation marks omitted); *Kwolek v. United States*, No. 11-mc-53, 2011 WL 2940984 (W.D. Penn. July 21, 2011) (finding Northern District of California's denial of motion to quash IRS summonses collaterally estopped plaintiff's petition to quash before Eastern District of Pennsylvania); *Bounkhoun v. Barnes*, No. 15-CV-631A, 2020 WL 1526917 (W.D.N.Y. Mar. 30, 2020) (finding that special pre-suit discovery proceeding in state court resulting in denial of discovery requests estopped plaintiff from later subpoenaing the same information).

Furthermore, the Court finds that the District of Arizona's decision was a sufficiently final disposition on the merits for the purposes of collateral estoppel. "Only a final judgment that is 'sufficiently firm' can be issue preclusive." *Robi v. Five Platters, Inc.*, 838 F.2d 318, 326 (9th Cir. 1988). Because Doe's several motions to quash are ancillary proceedings, no final judgment will be entered in those proceedings pursuant to Federal Rule of Civil Procedure 58. Nevertheless, "an order denying a motion to quash a subpoena qualifies as a final decision on the merits for purposes of res judicata." *Signature Mgmt.*, 2015 WL 1245861, at *4 (citing *Westwood Chemical Co. v. Kulick,* 656 F.2d 1224, 1227 (6th Cir. 1981)); *see also Highfields Capital Mgmt. L.P. v. Doe*, 385 F. Supp. 2d 969, 971 (N.D. Cal. 2005) ("[R]esolution of the motion [to quash] will conclude the miscellaneous proceeding in this district . . . ."). The Court observes that the Arizona court has denied Spider Labs's motion for reconsideration, but Spider Labs has not yet appealed the Arizona court's order to the Ninth Circuit. Thus, the Arizona court's order is sufficiently final for the purposes of issue preclusion in that it signals the end of the discovery proceeding before that court.

However, the Court disagrees that collateral estoppel applies to all arguments Doe raises here regarding application of the First Amendment. The parties did not "actually litigate," and the District of Arizona did not decide, whether Doe is entitled to invoke First Amendment protection in the first instance. "[A]n issue is actually litigated when an issue is raised, contested, and submitted for determination." *Janjua*, 933 F.3d at 1066; Restatement (Second) of Judgments § 27, cmt. (d) (1982) ("When an issue is properly raised, by the pleadings or otherwise, and is submitted for determination and is determined, the issue is actually litigated . . . .").

Accordingly, the Court will consider whether the record supports Doe's position that he is entitled to invoke the protections of the First Amendment as a basis to quash Spider Labs's

11

subpoenas.

### 2. Whether Doe is entitled to invoke First Amendment protections

In their original briefing, the parties assume that Doe is a person who possesses rights under the First Amendment. Spider Labs disputes application of the First Amendment based on the nature of the challenged speech, not the status of the speaker. Dkt. No. 20 at 8–10. Doe simply asserts that he has First Amendment rights. Dkt. No. 19 at 5. Because the basis for Doe's invocation of the First Amendment was not clear from the parties' submissions, the Court requested supplemental briefing identifying the legal and factual bases for application of the First Amendment. Dkt. No. 25. The Court did not authorize the submission of supplemental evidence.

U.S. citizens, whether inside or outside U.S. territory, possess First Amendment rights. *Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc.* ("*USAID I*"), 570 U.S. 205 (2013). While under some circumstances non-citizens within a U.S. territory possess certain constitutional rights, "it is long settled as a matter of American constitutional law that foreign citizens outside U.S. territory do not possess rights under the U.S. Constitution." *Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc.* ("*USAID II*"), 140 S. Ct. 2082, 2086 (2020) (finding that foreign corporations do not possess First Amendment rights, even if affiliated with U.S. entities). Thus, if Doe is a U.S. citizen or if he is a non-citizen within U.S. territory, then he may properly invoke the First Amendment; otherwise, he may not.

In the complaint before the Southern District of New York, Spider Labs alleges on information and belief that Doe is a U.S. citizen who resides within that district. *Spider Labs, Ltd. v. Doe*, No. 1:20-cv-05457-LAP, Dkt. No. 1 ¶¶ 2-4 (S.D.N.Y. July 16, 2020). At the hearing, Spider Labs explained that it has evidence Doe was in New York when he sent the emails at issue, but it does not know whether he is a U.S. citizen. Dkt. No. 28 at 43:17-18. Doe's declaration in support of his motion to quash is entirely silent on these matters. *See* Dkt. No. 19-1; Dkt. No. 28 at 13:6–15:12. In his supplemental brief, Doe asserts that, irrespective of his U.S. citizenship status, he was indeed lawfully and physically present within the United States when he sent the emails at issue, as Spider Labs alleges. Dkt. No. 29 at 8–9. He argues that his physical presence in the United States entitles him to First Amendment protections. *Id.*

12

The Court agrees with Doe that First Amendment speech protections "at a minimum apply to all persons legally within our borders." *Underwager v. v. Channel 9 Australia*, 69 F.3d 361, 365 (9th Cir. 1995). As Spider Labs does not dispute that Does was legally present within the U.S. at the time he sent the emails at issue, and did not oppose Doe's motion to quash based on his status, the Court concludes that Doe may invoke the First Amendment as a basis for his motion to quash.

### 3. Alternatively, Spider Labs has not met its burden under a prima facie standard

Given the dearth of authority regarding application of the collateral estoppel doctrine in the context of parallel ancillary discovery proceedings, the Court will additionally make clear its independent views of the merits of this dispute.

As Doe is a party to the underlying action in the Southern District of New York, the Court agrees with the District of Arizona that Spider Labs must satisfy a prima facie standard. Here, the Court relies on the standard as set forth in *Highfields Capital Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969 (N.D. Cal. 2005). *Rich v. Butowsky*, No. 20-mc-80081-DMR, 2020 WL 5910069, at *3 n.2 (N.D. Cal. Oct. 6, 2020) (observing that the *Highfields* test is appropriate where the anonymous speaker is a party to the litigation); *USA Techs.*, 713 F. Supp. 2d at 907 (applying *Highfields* test where Doe defendant in underlying action moved to quash subpoena for information revealing his identity). Under *Highfields*, the Court requires: (1) the plaintiff to adduce, without the aid of discovery, competent evidence addressing all of the inferences of fact essential to support a prima facie case on all elements of a claim; and (2) if the plaintiff succeeds, the Court must then

> assess and compare the magnitude of the harms that would be caused to the competing interests by a ruling in favor of plaintiff and by a ruling in favor of defendant. If, after such an assessment, the court concludes that enforcing the subpoena would cause relatively little harm to the defendant's First Amendment and privacy rights and that its issuance is necessary to enable plaintiff to protect against or remedy serious wrongs, the court would deny the motion to quash.

*Highfields,* 385 F. Supp. 2d at 975–76. As Spider Labs acknowledged at the hearing, its claims of tortious interference with prospective economic advantage and tortious interference with a contractual relationship derive from its defamation claim. Dkt. No. 28 at 38:20–39:7; *see also*

13

*Spider Labs*, 2020 WL 6262397 at *3 (noting that all claims stem from the defamation claim). The Court therefore focuses on the defamation claim.

Spider Labs contends that the New York court already determined that Spider Labs made the requisite prima facie showing when it concluded that "Spider Labs has adequately pleaded three causes of action" including defamation. *Spider Labs, Ltd. v. Doe*, No. 1:20-cv-05457-LAP, Dkt. No. 7 at 2 (S.D.N.Y. July 20, 2020); Dkt. No. 20 at 3, 12. However, the New York court's order addressed only whether the allegations of the complaint pled claims of defamation and tortious interference against Doe. The court did not consider whether Spider Labs adduced "competent evidence" in support of those claims.

To succeed on a claim for defamation, a plaintiff must establish (1) a false statement about the plaintiff; (2) that was published to a third party without authorization or privilege; (3) with fault amounting to at least negligence; and (4) that caused special harm or defamation per se. *Thai v. Cayre Group, Ltd.*, 726 F. Supp. 2d 323, 329 (S.D.N.Y. 2010). "[A] statement that 'tend[s] to injure the plaintiff in his or her trade, business or profession' is defamatory per se and does not require proof of special damages to be actionable," and "'[w]here a statement impugns the basic integrity or creditworthiness of a business, an action for defamation lies and injury is conclusively presumed.'" *Id.* at 331.

Spider Labs asserts that there are seven false statements in Doe's emails:

<u>Statement No. 1</u>: Doe was running an article about Spider Labs and its product, SpiderAF, on his blog;

<u>Statement No. 2</u>: Spider Labs's technology is not based on artificial intelligence;

<u>Statement No. 3</u>: Spider Labs is defrauding its clients;

<u>Statement No. 4</u>: Spider Labs's clients are not protected from fraud;

<u>Statement No. 5</u>: Doe had hired a team of engineers to test Spider Labs's technology;

<u>Statement No. 6</u>: there is nothing behind Spider Labs's platform; and

<u>Statement No. 7</u>: Spider Labs's platform cannot detect fraud.

Dkt. No. 20 at 13.

1    The Court finds that Spider Labs has not provided competent evidence supporting the first
2    element of its defamation claim. Statements Nos. 1 and 5 concern only Doe, not Spider Labs, and
3    therefore are not actionable, even if false. *See Thai*, 726 F. Supp. 3d at 329. With respect to
4    Statements Nos. 2, 3, 4, 6, and 7, to the extent these statements are capable of being proved true or
5    false, Spider Labs has not adduced competent evidence to support a prima facie showing that they
6    are false.

7    Mr. Doraido's initial declaration, on which Spider Labs relies, does little more than repeat
8    the allegations of the complaint in the underlying action. *Compare* Dkt. No. 20-1 *with Spider*
9    *Labs, Ltd. v. Doe*, No. 1:20-cv-05457-LAP, Dkt. No. 1 (S.D.N.Y. July 16, 2020). Mr. Doraido
10   does not refute the challenged statements. For example, he does not state that SpiderAF "uses AI-
11   driven tools," whatever that means. Instead, he simply states that "Spider Labs's primary service,
12   SpiderAF, is an anti-Ad Fraud software platform that offers users a variety of different services
13   and functions, including a reporting dashboard, a shared 'blacklist' service, and a real-time Ad
14   Fraud detection application program interface that customers can implement to for handling fraud
15   affecting their business." Dkt. No. 20-1 ¶ 21. It is not self-evident that those various services and
16   functions have anything to do with AI.[6] Nor does this assertion—or any other assertion by Mr.
17   Doraido—show that SpiderAF succeeds in detecting Ad Fraud, thereby negating Doe's statements
18   that Spider Labs is defrauding its clients and that its platform does not function to detect fraud. In
19   short, Spider Labs has not offered competent evidence showing that the challenged statements are
20   actually false.

21   The Court also finds that Spider Labs has not made a prima facie showing on the third
22   element of its defamation claim because it has not adduced competent evidence of fault on Doe's
23   part. Spider Labs argues that Doe's failure to contact Spider Labs before reaching out to its
24   customers or to license its technology is evidence of negligence, but Spider Labs cites no legal

---

[6] Indeed, Statement No. 2 may not be capable of being proven true or false based on how one defines "artificial intelligence." *See Ayaadurai v. Floor64, Inc.*, 270 F. Supp. 3d 343 (D. Mass. 2017) (holding that challenged statements could not be proved true or false because whether the plaintiff actually was the inventor of e-mail depended in substantial part on the definition of "e-mail," which the parties contested).

15

authority or factual support for its contention that someone in Doe's position acts negligently in failing to take these steps. Dkt. No. 20 at 13–14. Spider Labs also criticizes Doe for not obtaining specific details about how Spider Labs's service functioned in each individual customer's situation and for not following any "established methodology" for testing SpiderAF. Spider Labs does not explain why it believes Doe had an obligation to obtain specific details of Spider Labs's service or to use a particular testing methodology (which Spider Labs does not even describe). *Id.*

Accordingly, the Court finds that Spider Labs has not adduced competent evidence supporting the first and third elements of its defamation claim, and likewise has not adduced competent evidence supporting his derivative claims for tortious interference. Because the Court finds that Spider Labs has not provided competent evidence of a prima facie case, the Court need not consider the second part of the *Highfields* analysis.

### D. Doe's Request for Attorneys' Fees and Costs

Doe seeks his attorneys' fees and costs for moving to quash the subpoenas under California Code of Civil Procedure § 1987.2(c). Dkt. No. 19 at 18–19. Section 1987.2(c) provides that, when a movant successfully quashes or modifies a subpoena served on an Internet service provider (as defined in 42 U.S.C. § 230(f)(2)) for personally identifying information for use in an action outside of California that arises from the movant's exercise of free speech rights on the Internet and the respondent fails to make a prima facie showing of a cause of action, the movant is entitled to reasonable expenses and attorneys' fees incurred in moving to quash or modify.

An award of fees and costs is not appropriate here. First, "a motion . . . filed under Section 1987.1 for an order to quash or modify a subpoena from a court of this state for personally identifying information" is a prerequisite for fees and costs. Cal. Civ. Proc. Code § 1987.2(c). Doe did not file a motion to quash pursuant to California Civil Code § 1987.1; he moved solely under Rule 45 of the Federal Rules of Civil Procedure. Dkt. No. 19 at 5. Second, the Court is not persuaded that Doe's email communications with Spider Labs's customers are an "exercise of free speech rights on the Internet." The challenged statements were not posted publicly on the Internet, but communicated instead by private email.

16

1  Furthermore, Doe cites no authority supporting application of § 1987.2(c) in the
2  circumstances presented here. He did not provide—nor could the Court find—any examples of
3  California district courts applying section 1987.2 in a miscellaneous federal action where the
4  underlying action is premised on violations of another state's laws. The authority on which Doe
5  relies is distinguishable. In *Roe v. Halbig*, 29 Cal. App. 5th 286 (2018), the California Court of
6  Appeals held that a moving party in a California state court action may prevail within the meaning
7  of section 1987.2 even where a subpoena is withdrawn before the trial court rules on the motion to
8  quash. There, the challenged statements consisted of "'defamatory posts' about [the plaintiff] on a
9  number of websites and social media sites": a clear case of speech "on the Internet" that is not
10 present here. *Id.* at 293. In *In re Rule 45 Subpoena Issued to Cablevision Systems Corporation*
11 *Regarding IP Address 69.120.35.31*, No. MISC 08–347(ARR)(MDG), 2010 WL 2219343
12 (E.D.N.Y. Feb. 5, 2010), the federal district court did not consider section 1987.2 at all, but
13 awarded fees and costs solely under Rule 45.
14 To the extent Doe seeks an award of fees and costs under Rule 45(d)(1)—and it is not clear
15 that he does, *see* Dkt. No. 22 at 15—the Court is not persuaded that Spider Labs acted
16 unreasonably or in bad faith in pursuing the subpoenas. *See Legal Voice v. Stormans Inc.*, 738
17 F.3d 1178, 1185 (9th Cir. 2013) (noting that fees and costs under Rule 45(d)(1) is discretionary
18 and that "[a] court may . . . impose sanctions when a party issues a subpoena in bad faith, for an
19 improper purpose, or in a manner inconsistent with existing law") (citing *Mount Hope Church v.*
20 *Bash Back!*, 705 F.3d 418, 425 (9th Cir. 2012); *Mattel Inc. v. Walking Mountain Prods.*, 353 F.3d
21 792, 814 (9th Cir. 2003)).
22 The Court denies Doe's request for an award of attorneys' fees and costs.

### IV. CONCLUSION

24 For the foregoing reasons, the Court grants Doe's motion to quash the subpoenas to
25 Google and LinkedIn. Doe's request for relief under California Code of Civil Procedure
26 § 1987.2(c) is denied.
27 ///
28 ///

**IT IS SO ORDERED.**

Dated: December 7, 2020

*/s/ Virginia K. DeMarchi*
VIRGINIA K. DEMARCHI
United States Magistrate Judge